PATRICIA FERGUSON, Plaintiff-Appellee, v. LEONARD KASBOHM *et al.*,
Defendants-Appellants.

First District (4th Division)   No. 84—237

Opinion filed February 28, 1985.—Rehearing denied April 4, 1985.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, Gary A. Schafersman, and Shaun McParland, of counsel), for appellants.

Patrick J. Reynolds, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff-licensee suffered injury to her right arm and wrist when the rope she was using to pull defendants-property-owners' boat out

of the water snapped. The injury occurred on defendants' Michigan property. Plaintiff brought suit in Cook County, alleging negligence and wilful and wanton misconduct.

Following a bench trial, the trial judge found that defendants had or should have had knowledge of a latent defect in the rope and that the elements of both negligence and wilful and wanton misconduct were proved. The trial court awarded a $15,000 judgment on the wilful and wanton count only. Defendants now appeal, asserting that the Michigan recreational use statute (Mich. Comp. Laws sec. 300.201 (1979)), which limits landowner liability to gratuitous recreational users to injuries resulting from gross negligence or wilful and wanton misconduct, is applicable and that their conduct was not wilful and wanton.

We reverse the decision of the trial court.

BACKGROUND

In July 1978, plaintiff, Patricia Ferguson, visited her sister and brother-in-law, Arleda and Leonard Kasbohm, defendants, at their property in Michigan. During the visit, plaintiff decided to go fishing with two others in defendants' rowboat. Plaintiff knew that defendants had purchased the boat used a couple of years before, and plaintiff had seen the boat on prior occasions. Plaintiff had many years of experience at handling boats and fishing and in the use of ropes and lines in handling such boats.

Defendants gave plaintiff permission to use their boat to go fishing. The boat had a manila rope, approximately one-half to three-quarters of an inch thick, attached to its bow, with the other end attached to a homemade anchor. When plaintiff and the others were done fishing, they brought the rowboat back to shore. Plaintiff got out of the boat and started to pull on the rope while the boat, with the other passengers seated therein, was still in the water. Plaintiff dug her heels into the ground, leaned backwards and pulled on the rope. The rope snapped, causing plaintiff to fall backwards, injuring her right arm and wrist. Plaintiff brought suit in the circuit court of Cook County for the injuries she sustained.

Plaintiff alleged in count I of her complaint that defendants were negligent by their failure to inspect the boat and rope, their failure to warn plaintiff of the defective condition, and their failure to safely equip and maintain the boat. In her amended complaint, plaintiff added a second count for wilful and wanton misconduct, alleging that defendants had failed to warn her of the defective condition of the rope although they knew of said condition and that defendants failed

to replace the rope prior to the date of plaintiff's injury.

After hearing the testimony of plaintiff, defendant Leonard Kasbohm, and plaintiff's uncle Harold Sanders, the trial judge, applying Illinois law, found that defendants had knowledge of a latent defect in the rope and ruled in plaintiff's favor on both counts. The trial court entered judgment only on count II, wilful and wanton misconduct, in the amount of $15,000. Defendants now appeal.

OPINION

I

■■ Defendants' first argument on appeal is that the trial court erred by refusing to apply Michigan law in general, and the Michigan recreational use statute (Mich. Comp. Laws. sec. 300.201 (1979)) in particular. To determine the merit of defendants' contention, we must look at the applicable conflict of laws rules in Illinois.

Illinois applies the "most significant relationship test" when determining the applicable law in tort actions. This test embodies the presumption that the local law of the State where the injury occurred governs the rights and liabilities of the parties unless another State has a more significant relationship to the occurrence or to the parties involved. (*Pittway Corp. v. Lockheed Aircraft Corp.* (7th Cir. 1981), 641 F.2d 524.) Thus, the law of the State where the tort occurred, here Michigan law, will be used to decide the outcome of the present action unless Illinois has a more significant relationship to either the parties or the injury. *Harkcom v. East Texas Motor Freight Lines, Inc.* (1982), 104 Ill. App. 3d 780, 433 N.E.2d 291.

Under the facts at bar, we find no reason to supplant the presumptive importance given to the place of injury, here Michigan, in deciding the choice of law to be applied. There is nothing in the record to suggest that Illinois has a more significant relationship to the occurrence than does Michigan. The injury occurred in Michigan, the boat is located in Michigan, and defendants' property is in Michigan. In addition, the defendants are Michigan domiciliaries. While plaintiff is domiciled in Illinois, this single factor is not sufficient to overcome the presumption that the local law of the State in which the injury occurred governs this action. It was therefore incumbent on the trial court to apply Michigan law.

■■ The real issue here is not, however, whether Michigan law applies but whether, as defendants contend, the Michigan recreational use statute applies. (Mich. Comp. Laws. sec. 300.201 (1979).) The recreational use statute, which governs the liability of landowners for in-

juries to gratuitous recreational users of property, reads in pertinent part as follows:

> "300.201. Liability of landowners for injuries to guests; gross negligence; wilful and wanton misconduct

> Sec. 1. No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee."

The statute does not change the common law duty of owners and occupiers of property to those who come upon such property as mere licensees. (*Estate of Thomas v. Consumers Power Co.* (1975), 58 Mich. App. 486, 228 N.W.2d 786.) It does, however, shield from liability all owners of land within its purview from all acts of negligence, whether active or passive. (*Crawford v. Consumers Power Co.* (1981), 108 Mich. App. 232, 310 N.W.2d 343.) The trial court's finding in favor of plaintiff on count I, the negligence count, therefore suggests that the trial court determined that the recreational use statute was not applicable to the instant case and that it decided the matter under common law tort principles. Because application of the Michigan statute is a matter of law, the trial court's decision as to its inapplicability is properly before this appellate court. And, while we do not readily attempt to discern the intent of the Michigan legislature in enacting their recreational use statute, we must do so in order to justly resolve the instant issues. We do, of course, rely on the law of Michigan to interpret this Michigan statute.

Michigan courts have interpreted section 300.201 (Mich. Comp. Laws sec. 300.201 (1979)) as merely codifying principles that are universally recognized in common law jurisdictions with regard to such duties owed by owners and occupiers of property to those who come upon such property merely as licensees. (*Crawford v. Consumers Power Co.* (1981), 108 Mich. App. 232, 310 N.W.2d 343; *Estate of Thomas v. Consumers Power Co.* (1975), 58 Mich. App. 486, 228 N.W.2d 786, *aff'd in part, rev'd in part on other grounds* (1975), 394 Mich. 459, 231 N.W.2d 653.) In Michigan, a social guest is viewed as a licensee. (*Preston v. Sleziak* (1970), 383 Mich. 442, 175 N.W.2d 759.) The trial court, however, interpreted the recreational use statute to apply only to those licensees who go onto the property of another spe-

cifically and, apparently, exclusively for the purpose of indulging in a particular outdoor recreational use. Based on the plain language of section 300.201, we find the trial court's interpretation of the class against whom the statute protects landowners from liability for negligence to be too narrow.

Section 300.201 provides that no cause of action shall arise for injuries to a licensee who is on the land of another "without paying valuable consideration for the purpose of * * * any outdoor recreational use." The words "for the purpose of" modify "paying valuable consideration for"; they do not, as the trial court interpreted, modify the phrase "on the lands of another." In section 300.201, the words "for the purpose of" are synonymous with "in exchange for." One must pay valuable consideration for the purpose of outdoor recreational use or in exchange for outdoor recreational use in order to have a cause of action against the landowner for negligence.

In the instant case, plaintiff, an adult social guest, was a licensee who was on defendants' land and had not paid any valuable consideration to be allowed to engage in a particular recreational use. Plaintiff had not paid defendants a fee for the purpose of fishing. The fact that plaintiff was on defendants' land with their permission and had in fact used defendants' boat with their permission does not alter plaintiff's status in regard to the express provisions of the Michigan recreational use statute. Section 300.201 explicitly sets forth that it applies to persons on another's land "with or without permission." (Mich. Comp. Laws sec. 300.201 (1979).) Because (1) Michigan courts have interpreted the recreational use statute to be a codification of the duties owned by owners of property to licensees, and (2) plaintiff was a licensee who (3) did not pay valuable consideration for the purpose of outdoor recreational use, we find no basis on which to affirm the trial court's determination that section 300.201 does not apply to the present case.

Because section 300.201 shields from liability all owners of land falling within its purview for all acts of negligence, whether active or passive (*Crawford v. Consumers Power Co.* (1981), 108 Mich. App. 232, 310 N.W.2d 343), the trial court's finding in favor of plaintiff on count I, for negligence, cannot stand and is, therefore, reversed.

## II

This brings us to count II of plaintiff's complaint, alleging wilful and wanton misconduct, liability for which landowners are not shielded under the Michigan recreational use statute. The three elements necessary to prove defendants guilty of wilful and wanton be-

havior have been set forth by the Michigan Supreme Court in *Burnett v. City of Adrian* (1982), 414 Mich. 448, 463, 326 N.W.2d 810, 815, as follows:

"(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another;

(2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand;

(3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove *disastrous* to another." (Emphasis added.)

The *Burnett* court, affirming these elements first set forth in *Gibbard v. Cursan* (1923), 225 Mich. 311, 196 N.W. 398, stressed that it is this last element, the recognition of *serious* or *dire* consequences, that sets apart wilful and wanton misconduct from negligence. (414 Mich. 448, 471-72, 326 N.W.2d 810, 819.) It is also this last element that is missing under the facts of the instant case.

There was much testimony adduced at trial as to the defendants' knowledge of the condition of the rope and as to the condition of the rope itself. However, there was no evidence that would make it apparent to the ordinary mind that any lack of care on defendants' part, whether to warn of the rope or to replace the rope, would be "likely to prove disastrous" to another. A dangling, high voltage wire which may and does result in death by electrocution is likely to prove disastrous to another. (*Crawford v. Consumers Power Co.* (1981), 108 Mich. App. 232, 310 N.W.2d 343.) An unmarked guy wire of a utility pole that violates the industry's safety code and may and does result in a snowmobiler's death is likely to prove disastrous to another. (*Estate of Thomas v. Consumer Power Co.* (1975), 394 Mich. 459, 231 N.W.2d 653.) An unsafe dock upon which children fish and from which a child may and does fall to his death is likely to prove disastrous to another. (*Magerowski v. Standard Oil Co.* (W.D. Mich. 1967), 274 F. Supp. 246.) A faded one-half- to three-fourths-inch-thick manila rope attached to the bow of a rowboat used for fishing simply does not rise to the status of a threatened danger which, if left unaverted, will apparently result in consequences likely to prove disastrous to another. Plaintiff has even failed to allege that as a consequence of defendants' allegedly wilful misconduct, it would be apparent to the ordinary person that the result would be likely to prove disastrous to anther. At least one Michigan court has found that such an omission in and of itself renders fatal a claim for wilful and wanton misconduct brought under the recreational use statute. *Graham v. County of Gratiot*

(1983), 126 Mich. App. 385, 337 N.W.2d 73.

Moreover, an owner or occupier of land has no duty to warn or otherwise protect persons coming upon the land from obvious, as opposed to hidden, defects. (*Kirner v. Central Foundry Division, General Motors Corp.* (1972), 41 Mich. App. 211, 199 N.W.2d 827.) The testimony adduced at trial proved that plaintiff had actual knowledge that defendants purchased the boat used a couple of years before the fishing incident, that she saw nothing about the boat that was new, and that the rope on the boat was obviously old and faded. Thus, the "defect" in the rope that caused it to break, namely its age, would hardly qualify as hidden.

For these reasons, we find that the trial court's decision in favor of plaintiff on count II of her complaint, that count alleging wilful and wanton misconduct, is against the manifest weight of the evidence and must be reversed.

Accordingly, we reverse the decision of the trial court.

Reversed.

JIGANTI, P.J., and JOHNSON, J., concur.