Dorothy BALABANOS, Peter W. Hegel, Aphrodite Hegel, Peter Hegel, Sr., Elizabeth Hegel, Pamela Radke, John Saratsiotis, M.D. and Evonne Saratsiotis, Plaintiffs,

v.

NORTH AMERICAN INVESTMENT GROUP, LTD., Marvin Berkowitz, Konstantine Polites and Ira Kaufman, Divesco, Inc., an Illinois corporation, George E. Polites and Eva Courialis Thomas, Defendants.

No. 86 C 3802.

United States District Court, N.D. Illinois, E.D.

March 9, 1988.

---

Paul J. Maganzini, Maganzini McMahon & McNicholas, Chicago, Ill., for plaintiffs.

Marvin Berkowitz, E. James Gildea, Thomas, Mason D. Sullivan, G.E. Polites and Divesco, Chicago, Ill., Stavros & Biasiello, K. Polites, Wheeling, Ill., Wayne S. Shapiro, Kaufman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The complaint in this action was brought by eight individual investors against an investment association, North American Investment Group, Ltd. ("N.A.I.G."); an investment corporation, Divesco, Inc. ("Divesco") and five individual defendants associated with the two defendant investment organizations. The complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (West Supp.1987), as well as various state law claims all arising out of defendants' investment activities on behalf of the plaintiff investors. Various defendants have filed motions to dismiss which we grant for the reasons stated below.

### I.

The complaint alleges that from approximately August 1982 through July 1984 defendants N.A.I.G., Marvin Berkowitz, Konstantine Polites, Ira Kaufman and Eva Courialis Thomas (collectively "the N.A.I.G. defendants") engaged in an abusive tax shelter scheme, and "[f]rom prior to November 1, 1983 through the present," defendants Divesco and George E. Polites (collectively "the Divesco defendants") "by and through their authorized agents ... as transferees, successors and assignees at N.A.I.G. Partnerships and N.A.I.G. Defendants and/or as *de facto* general partners and in control and [in] operation of N.A.I.G. and Divesco partnerships, willfully engaged in a scheme to defraud or attempt to defraud the plaintiffs." (Complaint ¶ 25).[1] In July 1984, "[c]ertain N.A.I.G. defendants consented to a Final Judgment of Permanent Injunction (Consent Judgment) by Judge William T. Hart on

---

1. As a motion to dismiss for failure to state a claim, the Court, of course, takes the well-pleaded allegations of the complaint as true and views them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Accordingly, to the extent defendants have referred to matters outside of the pleadings, for example the fact that certain plaintiffs' tax returns were actually filed in Maryland, we ignore such arguments and concern ourselves solely with the pleadings.

July 26, 1984, in the matter entitled *United States of America v. North American Investment Group, Ltd., et al.,* Cause No. 84 C 3683, in the United States District Court for the Northern District of Illinois, Eastern Division, wherein the abuses were in fact the same [as alleged in this action]." (Complaint ¶ 17) The complaint further alleges that the plaintiffs were never informed of this consent judgment and that the plaintiffs continued to be defrauded because the Divesco defendants had been managing and operating the N.A.I.G. and Divesco partnerships in the same fashion from on or about November 30, 1983, which was over six months prior to the entry of the consent judgment. The plaintiffs allege that Divesco, as the *de facto* general partner in control of the N.A.I.G. and Divesco partnerships, sent the N.A.I.G. investors, including plaintiffs, notices to make "capital contributions, payments or receivables allegedly due by [plaintiffs] to N.A.I.G. Partnerships directly to Divesco." (Complaint ¶ 26). Thus, the plaintiffs allege that Divesco and N.A.I.G. operated in concert to further their scheme.

The crux of the scheme was to sell plaintiffs and others limited partnerships in syndicated real estate packages through which expenditures would qualify for investment tax credits ("ITC") under the Internal Revenue Code. This would generate sufficient ITCs to reduce the plaintiff investors' federal income tax to zero for the then current year and also generate sufficient ITCs to carry back to the third preceding tax year to reduce that liability to zero as well. N.A.I.G. and Divesco never owned the properties as they were required to do so under the tax laws in order to claim the ITCs. They also syndicated the property without the knowledge or permission of the true owners. The rehabilitation expenditures were never actually made, and N.A.I.G. and Divesco merely created fictitious figures which were then reported to the Internal Revenue Service ("IRS"). N.A.I.G. and Divesco falsified documents which backdated the plaintiffs' investment payments to prior years and also prepared false federal income tax returns for the plaintiffs to claim the ITCs. The scheme was envisioned to last at least for three years. Each year the investor would invest for that year and would also have an unused ITC carryback to the third preceding year. By doing this for three consecutive years the investor would then receive refunds in the amount of his total taxes paid for six years and reduce his tax liability to zero.

The investors have recently been informed by the IRS that their deductions attributable to these investments have been totally disallowed. The IRS independently determined that there is no substantiation for any business activity by the N.A.I.G. and Divesco partnerships and the IRS assessed tax deficiencies and penalties to the plaintiff investors as a result of their investments in the purported tax shelter programs of N.A.I.G. and Divesco.

**II.**

There are four separate motions to dismiss the RICO Count on various grounds and the other counts for lack of pendent jurisdiction. The motions raise five issues: (1) failure to allege a pattern of racketeering activity; (2) failure to plead fraud with specificity under Fed.R.Civ.P. 9(b); (3) failure to allege the existence of a racketeering enterprise; (4) failure to allege an enterprise that functioned as a continuing unit and that existed apart from the pattern of racketeering activity in which it engaged; and (5) Statute of Limitations as to the RICO count. Because we must dismiss the RICO count under Fed.R.Civ.P. 9(b) as discussed below, we need not address the last three issues. However, should plaintiffs file an amended complaint, defendants may renew those arguments in a new motion to dismiss the amended complaint.

■ Defendants Divesco,[2] G. Polites and K. Polites move to dismiss the RICO claim

---

**2.** On September 30, 1986, this Court allowed plaintiffs' motion for entry of a default judgment against Divesco. On January 27, 1987,

Divesco filed a motion to vacate the entry of default and for leave to file this joint motion to dismiss with George Polites. We allowed the

for failure to adequately allege the existence of a "pattern of racketeering activity" which is necessary to state a claim under RICO. Because this issue also concerns their argument under Fed.R.Civ.P. 9(b) that the complaint fails to allege fraud with particularity, we will address both issues together.

A key element of a claim under 18 U.S.C. § 1962 is the existence of a pattern of racketeering. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1304 (7th Cir.1987). In *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court noted that a pattern of racketeering activity required more than just two acts committed within a ten year period; the acts must have "continuity plus relationship which combines to produce a pattern." *Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14. Since *Sedima,* the circuit courts have struggled with defining the concept of a "pattern" under RICO. The Seventh Circuit has taken a middle position among the circuits requiring that the predicate acts be "ongoing over an indentifiable period of time so that they can fairly be viewed as constituting separate transactions." *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). The Seventh Circuit has recently reiterated the proper analysis under its recent case law on the subject:

> In determining whether the predicate acts are sufficiently continuous and related, we urged courts to examine the following factors: the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. We noted however that "the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement." Thus, *Morgan* envisioned a fact-specific inquiry, in which no single factor would be determinative. In *Lipin Enterprises v. Lee,* [803 F.2d 322 (7th Cir.1986)], however,

we noted that a single fraudulent scheme with one injury to one victim was not transmuted into a federal case simply because it required several acts of mail and wire fraud to inflict a single injury. *Liquid Air,* 834 F.2d at 1304 (citations omitted). In conducting this analysis we are hampered by the exact lack of particularity in the complaint complained of by defendants Divesco, and George and Konstantine Polites under Fed.R.Civ.P. 9(b). Rule 9(b) does not command that a plaintiff plead evidence and prove his case in the complaint. *Haroco, Inc. v. American National Bank & Trust Co.,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). However, in detailing the scheme to defraud, the plaintiff must give a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants. *Ghouth v. ContiCommodity Services, Inc.,* 642 F.Supp. 1325, 1331 (N.D.Ill.1986). In the context of allegations of mail fraud this means that plaintiffs must sketch out *who* (i.e. which defendant) caused *what* to be mailed *when,* and *how* that mailing furthered the fraudulent scheme. *Id.* at 1331–32. In reviewing the complaint we find that it adequately alleged *what* the general fraudulent conduct was, i.e. the abusive tax shelter scheme, *when* and *where* it took place and *how* it was perpetuated and by *whom.* The complaint alleges that the N.A.I.G. defendants (¶¶ 7–11) "have been and/or are presently engaged in organizing or promoting or assisting in the organization of or selling interests in, and/or the operation of [the] alleged tax shelter partnership programs...." (¶ 14). The complaint also alleges that "Divesco defendants (¶¶ 17–18) have been and/or are presently engaged in organizing or promoting or assisting in the organization of or selling interests in and/or the operation of alleged tax shelter partnership programs...." (¶ 20).

■ However, we find that plaintiffs have not adequately alleged the predi-

filing of the motion to dismiss only as to Polites and took it under advisement as to Divesco pending resolution of Divesco's motion to va-

cate the entry of the default. We address the motion to vacate in a separate opinion.

acts of racketeering with particularity. The complaint makes the following allegations concerning the predicate acts of mail and wire fraud:

> 47. In furtherance of Defendants' scheme and artifice set forth above or to effectuate its purpose or as a result of the false and fraudulent representation and to facilitate their transmission, Defendants used or caused to be used, mail delivered by the United States Postal Service on numerous occasions, and thereby violated 18 U.S.C. Section 1341 and 18 U.S.C. Section 1962(c).

> 48. In furtherance of Defendants' scheme and artifice set forth above or to effectuate its purpose or as a result of the false and fraudulent representation and to facilitate their transmission, Defendants used or caused to be used, on numerous occasions, the telephone and thereby violated 18 U.S.C. Section 1343 and 18 U.S.C. Section 1962(c).

Plaintiffs argue that the complaint sufficiently informs the defendants of the predicate acts:

> (Comp., pars. 33—fictitious figures reported to the IRS; par. 34—false and backdated documents and payments; and Count I, par. 39 failed to file the required documentation and account to the Plaintiffs; and Count II, par. 41—fraudulent tax returns and "continuing" to advise that the IRS investigation was "baseless" and "without merit").

We disagree. The only mention we could find in the complaint of a predicate act of mail fraud with particularity is in paragraph 16:

> Subsequent to the entry of the Consent Judgment and without disclosure thereof, the "investors" in the N.A.I.G. Partnerships, including plaintiffs, were advised through individual *mailed* notices to make further capital contributions

("monthly payments") on the account of the N.A.I.G. Partnerships to other entities, including Divesco, Inc. (Emphasis added).

This paragraph alone is sufficient to meet the requirements of Rule 9(b) when read in the context of the complaint as to the particular acts of mail fraud it refers to, i.e. the mailed notices to make further contributions. Unfortunately, the complaint does not allege that the tax returns sent to the government were mailed or that any other communications were mailed. This may just be an example of sloppy or hasty drafting. It is likely that the tax returns were sent to IRS by way of the U.S. Mail (¶ 41), and that the fictitious figures "reported" to the IRS were "reported" by U.S. Mail (¶ 33). This is not, however, what the complaint says. Accordingly, we cannot consider these attempted allegations of predicate acts in determining whether plaintiffs have adequately alleged a pattern. Thus, we are left only with the ¶ 16 mail fraud allegations. As such we do not think this one mass mailing at one point in time constitutes a pattern. The Seventh Circuit in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986) held that in order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., transactions somewhat separated in time and place. *Id.* The mass mailing at one point time alleged in ¶ 16 of the complaint by itself does not meet the standard of "somewhat separated in time and place." Accordingly, we must dismiss Count III against all defendants for failure to allege the predicate acts of mail and wire fraud with particularity under Fed.R. Civ.P. 9(b), because this in turn resulted in a failure to adequately allege a pattern of racketeering under RICO.[3]

---

**3.** However, because this infirmity may be only the result of poor or hasty drafting, we dismiss with leave to amend. So long as the tax returns were mailed to the IRS, and the false figures were mailed to the IRS or communicated via interstate telephone communications, plaintiffs could sufficiently plead a pattern of racketeering under the standard set forth in *Morgan* and

its progeny. Assuming these acts took place via the mail and/or via interstate telephone communications, plaintiffs have alleged a scheme wherein multiple victims on numerous occasions were lured into investing into fraudulent tax shelters. The scheme was ongoing from its initiation in 1982 through the filing of this complaint. Each separate request for money would

### Conclusion

We grant defendants' motion to dismiss the RICO count under Fed.R.Civ.P. 9(b) for failure to plead the acts of racketeering with particularity as to all defendants. Additionally, because there is no longer any basis for this lawsuit to remain in federal court, we dismiss the pendent state law counts against all defendants for lack of subject matter jurisdiction under Fed.R. Civ.P. 12(b)(1). We also grant plaintiffs leave to amend the complaint within twenty days of the date of this opinion. It is so ordered.

constitute a separate injury, as would the mailing of fraudulent tax returns. *See Illinois Department of Revenue v. Phillips,* 771 F.2d 312, 313 (7th Cir.1985).