**Wayne LANDON and Janel Landon, Plaintiffs,**

v.

**GTE COMMUNICATIONS SERVICES INCORPORATED, a Delaware corporation, and US Telecom, Inc., a Kansas corporation, Defendants.**

No. 88 C 0932.

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1988.

J. Reed Millsaps, Stephanie J. Hayes, Phyllis W. Monks, Lewis F. Matuszewich, P.C., Chicago, Ill., for plaintiffs.

Michael W. Ward, Henry T. Kelly, O'Keefe, Ashenden, Lyons & Ward, Gregory J. Schroedter, Eric J. Avram, Charles G. Albert, Laurie D. Jaffe, Bell Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Wayne and Janel Landon bring this four-count action against GTE Communications Services, Inc. ("GTE") and U.S. Telecom, Inc. ("US Telecom") charging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1978), and breaches of various state law duties. Defendants move to dismiss all counts and seek reimbursement for costs and fees under Fed.R. Civ.P. 11. For the following reasons, we grant the motion to dismiss and deny the motion for sanctions.

### I.

### Factual Background [1]

GTE and US Telecom marketed through US Telecom's subsidiary ISA Communication Service, Inc. ("ISACOMM") and later through U.S. Sprint, successor to ISACOMM, a video services package called "the Meeting Channel" that allows organizations and companies to arrange conferences in which participants at specified locations throughout the United States communicate via satellite. In late 1983, Wayne Landon and ISACOMM discussed the possibility that Travelbound, Inc., a travel agency owned by the Landons, would act as a broker for ISACOMM, selling conference

---

1. The Landons allege the following facts in their Second Amended Complaint which, along with all reasonable inferences therefrom, we take as true for purposes of this motion to dismiss.

*Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

time at ISACOMM's Chicago facility. On February 17, 1984, and again in later telephone conversations, ISACOMM representatives told Wayne Landon that ISACOMM would set up the Chicago facility at the Olympia & York Centre. Based on this representation as well as other representations as to a broker's projected revenues and the expected facilities that would be available nationally, Travelbound signed an agreement with ISACOMM ("Broker Agreement"). In furtherance of their duties under the Broker Agreement, the Landons prepared brochures to advertise the Meeting Channel and began to seek customers.

ISACOMM failed to establish a conference facility at the Olympia & York Centre and then proposed in April 1985 that the Landons host a Chicago facility—i.e., arrange a location and operate the facility. Before accepting the proposal, the Landons asked ISACOMM to provide information as to current and projected public use of such facilities. Despite results of its own survey indicating unfavorable public use, ISACOMM stated that it could not accurately determine public use but that in general current and projected use were good. The Landons then organized Electronics Meetings, Inc. ("EMI") to operate a Chicago facility for the Meeting Channel, and on August 13, 1985, ISACOMM and EMI entered into a Teleconference Equipment and Communications Services Agreement ("Services Agreement").

In furtherance of their obligations under this contract, the Landons obtained loans from the Small Business Administration, executed a new lease for EMI and Travelbound, hired additional staff and incurred various other expenses in preparation of the facility. On January 1, 1986, Travelbound and EMI moved into the facility. ISACOMM, now US Sprint, promised to install all of the required equipment for the facility by January 15, 1986, but did not actually install the equipment until three months later. US Sprint also failed to fulfill its promise to advertise the Meeting Channel locally and to assist in the operation of the facility. In June 1987, the Landons closed EMI and the Meeting Channel facility, and on February 1, 1988, filed this four-count action charging a violation of RICO, fraudulent misrepresentation, negligent misrepresentation and breach of the Services Agreement's covenant of good faith and fair dealing. Defendants move to dismiss all counts.

## II.

### Racketeering

To state a claim for relief in a civil action under RICO, a plaintiff must satisfactorily plead that

> a person through a pattern of racketeering activity ... directly or indirectly invests in or maintains an interest in, or participates in an enterprise; the activities of which affect interstate commerce. *Serig v. South Cook County Service Corp.*, 581 F.Supp. 575, 577 (N.D.Ill. 1984).

The Landons charge in Count I that US Telecom and GTE operated ISACOMM and US Sprint through a pattern of racketeering activity in furtherance of a scheme to defraud the Landons in violation of RICO, § 1962(c).[2] Defendants contend that the Landons have failed to satisfactorily plead a pattern of racketeering activity and predicate acts of mail and wire fraud. We address each contention in turn and dismiss

---

**2.** The Landons plead a violation of § 1964 which is technically incorrect. Section 1964 provides that an individual may bring a cause of action in federal court in the event he is injured "by reason of a violation of section 1962." It is clear, however, that the Landons attempt to plead a violation of § 1962(c) which states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partic-

ipate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

As evidenced by US Telecom's motion to dismiss, the complaint puts defendants on fair notice of the source of the alleged RICO violation. Accordingly, this error in pleading is not fatal to the complaint. *Accord, Caldwell v. Miller,* 790 F.2d 589, 595 (7th Cir.1986).

the claim for failure to plead acts of fraud with particularity.

### A. Pattern of Racketeering Activity

Congress defined a "pattern" to be "at least two acts of racketeering activity ... the last of which occurred within ten years [of the first]." 18 U.S.C. § 1961(5). This conceptually simple definition has been the source of extensive litigation since the Supreme Court rejected two isolated acts as a basis for RICO liability and suggested that the acts must have "continuity plus relationship which combines to produce a pattern." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Seventh Circuit recently reviewed its line of decisions that establish the factual allegations necessary to plead "continuity plus relationship" and summarized their holdings:

> [I]n order for the predicate acts to be sufficiently continuous to amount to a pattern of racketeering activity, "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" And at the same time, there must be a "relationship among activities—i.e., activities leading up to coordinated action." (Citations omitted). *Medical Emergency Service Associates, S.C. v. Foulke*, 844 F.2d 391, 395 (7th Cir.1988).

In balancing the continuity and relationship requirements to determine whether the plaintiff has pled a pattern, a court must focus on the following factors:

> the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.*

The Seventh Circuit has provided some guidelines to aid in this fact-specific inquiry. Generally, in cases such as this in which there is a single victim of the alleged racketeering, the plaintiff must be able to reasonably characterize the several predicate acts "as amounting to separate and distinct transactions in time and place" (relationship) that together can be considered to constitute a scheme to defraud the plaintiff (continuity). *Id.* In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), the court found a pattern in allegations that the multiple acts of fraud could be grouped as part of three separate transactions—two foreclosure sales and a loan transaction, each injuring the plaintiff. Similarly, in *Appley v. West*, 832 F.2d 1021 (7th Cir.1987), the court held that two acts of concealing the conversion of funds from two separate bank accounts constituted a pattern since each act related to an independent transaction and independently injured the plaintiff in a single scheme to defraud the plaintiff. *See also Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987) (upholding a jury finding that the fraudulent preparation of nineteen separate invoices as part of a single scheme constituted a pattern since each act independently injured the victim); *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985) (finding a pattern in the filing of nine fraudulent state sales tax returns); *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325 (N.D.Ill.1986) (finding a pattern in the forged endorsements of four separate checks, each resulting in the conversion of plaintiff's money).[3]

---

**3.** In the following cases, the Seventh Circuit held that the plaintiff failed to allege a pattern of racketeering activity against a single victim: *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936 (7th Cir.1988) (predicate acts inflicted a single identifiable injury in a single transaction—the purchase of a corporate division); *Foulke* (acts inflicting injury in a single transaction—replacing plaintiff as provider of emergency room services to a hospital); *Marks v. Pannell Kerr Forster*, 811 F.2d 1108 (7th Cir. 1987) (acts to defraud plaintiff on one occasion out of interests in twenty-one separate partner-

ships); *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322 (7th Cir.1986) (acts related to a single, albeit complicated, transaction in the sale of stock); *Tellis v. United States Fidelity & Guaranty Co.*, 826 F.2d 477 (7th Cir.1986) (single transaction to induce employee to settle a compensation claim). *See also Singh v. Curry*, 667 F.Supp. 603 (N.D.Ill.1987), *on reconsideration*, 1988 U.S.Dist. Lexis 305 (1988) (the harm resulting from each predicate act was cumulative, rather than independent, and related to a single transaction to deprive the victim of the benefits of a contract).

■] For purposes of this inquiry, the Landons are a single victim since it is essentially their joint interests in Travelbound and EMI that were affected as a result of the defendants' actions. Defendants contend that the alleged predicate acts of racketeering relate solely to a single transaction—"the conduct of GTE and US Telecom in relation to Travelbound and EMI under the Broker Agreement and the Teleconference Equipment Agreement." This mischaracterizes the four-year relationship between the parties. Reading the complaint as a whole, we view the alleged racketeering acts [4] as related to at least two separate and distinct transactions and resulting in independent injuries to the Landons. First, through misrepresentations in 1983 and 1984 as to projected broker revenues and the availability of Meeting Channel facilities nationally and in Chicago, defendants induced the Landons to enter into a Broker Agreement and thereby expend funds for marketing the channel. Second, through misrepresentations as to host profitability and the public use of facilities, defendants induced the Landons to enter into the Services Agreement and thereby assume various loan and lease obligations and expend funds to operate EMI. Each transaction involved a separate contract and took place during separate time periods. That both transactions arose out of the parties' common interest in the Meeting Channel does not deprive them and the accompanying injuries to the Landons of their distinctiveness for purposes of this analysis. Accordingly, the Landons have satisfactorily pled a pattern.

### B. Predicate Acts of Fraud

■ The Landons have, however, failed to plead predicate acts of racketeering by the defendants with sufficient particularity, and it is on this basis that we dismiss the RICO claim. Essential to a RICO claim is allegations of fraudulent acts by the defendant or by the enterprise at the direction of or with the tacit approval of the defendant. The Landons set forth numerous misrepresentations and list various predicate acts but, with the exception of two instances in 1986 of US Telecom employees sending letters to the Landons, the complaint lacks any allegations that GTE and US Telecom directed or participated in the predicate acts of wire and mail fraud that form the pattern of racketeering activity.

■ In attempting to remedy this deficiency, the Landons contend that US Telecom and GTE were joint venturers with ISACOMM and US Sprint, and that the acts of employees and agents of the latter may be attributed to the defendants. Even if the complaint established ISACOMM's status as a joint venturer, this argument is misplaced. Liability under § 1962(c) hinges on identification of two separate entities —the "person" and the "enterprise." Thus, a corporation is not liable under RICO for the acts of its employees and agents. *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). The Landons plead the defendants as the "persons" and ISACOMM and US Sprint as the "enterprises." Certainly, ISACOMM as a subsidiary of US Telecom was a distinct legal entity for purposes of RICO. *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 402 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). To view ISACOMM and US Telecom as joint venturers would remove this separate legal status and bar relief under RICO.

In addition to their failure to allege defendants' culpability, the Landons fail to plead the predicate acts of mail and wire fraud with sufficient particularity. We have stated that Fed.R.Civ.P. 9(b) places the following burden upon the plaintiff:

[A] complaint which alleges ... fraud must state with particularity specific fraudulent acts comprising fraud. In describing the circumstances constituting

---

**4.** We assume at this point that the Landons have properly pled defendants' racketeering activities.

fraud, the plaintiff must describe the "time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby." (Citations omitted). *D & G Enterprises v. Continental Illinois National Bank*, 574 F.Supp. 263, 267 (N.D.Ill.1983).

In the context of a RICO claim, the plaintiff must additionally allege how each specific act of mail or wire fraud actually furthered the fraudulent scheme. *Spiegel v. Continental Illinois National Bank*, 790 F.2d 638, 649 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). In sum, the plaintiff "must sketch out *who* (i.e., which defendants) caused *what* to be mailed [or used the telephone] *when*, and *how* that mailing [or phone call] furthered the fraudulent scheme." *Balabanos v. North American Investment Group, Ltd.*, 684 F.Supp. 503, 506 (N.D.Ill. 1988). The Landons provide an extensive list of telephone calls and mailings and identify dates and specific individuals. They do not, however, allege the contents of those calls and letters and, more importantly, how each furthered the fraudulent scheme or related to one of the transactions that constitute the pattern. Defendants are entitled to such allegations before answering the complaint. For these reasons, the RICO claim is dismissed.

### III.

### State Law Claims [5]

### A. Governing Law

As a preliminary matter, we must resolve the parties' dispute regarding the law governing these claims since the choice of law affects the merits of the motion to dismiss the state claims. *Zurich Insurance Co. v. Heil Co.*, 815 F.2d 1122, 1123 (7th Cir.1987). In deciding the governing law, we apply the conflicts rules of Illinois,

the forum state. *Soo Line RR Co. v. Escanaba & Lake Superior RR Co.*, 840 F.2d 546, 552 (7th Cir.1988).

The fraudulent and negligent misrepresentation claims of Counts II and III are tort causes of action.[6] Under Illinois conflicts rules, tort actions are governed by the law of the state in which the injury allegedly resulting from the tortious conduct occurred, unless another state has a more significant relationship to the transaction at issue. *Ferguson v. Kasbohm*, 131 Ill.App.3d 424, 86 Ill.Dec. 605, 607–08, 475 N.E.2d 984, 986–87 (1st Dist.1985). Illinois courts look to the following factors in determining whether a state other than the situs of injury has a more significant relationship: the state in which the tortious conduct occurred; the domicile, residence, place of incorporation and place of business of the parties; and the jurisdiction, if any, in which the parties' relationship centered. *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524 (7th Cir.1981).

■ Under this analysis, Illinois law governs the misrepresentation claims. First and foremost, the Landons endured all of the various alleged injuries in Illinois. The Landons reside in Illinois, and their businesses Travelbound and EMI were located in Illinois. They expended the funds and incurred the loan and lease obligations in Illinois as a result of the defendants' tortious conduct. Other factors further establish that Illinois has the most significant relationship to these tort claims. The parties' obligations under the contract were, for the most part, to be performed in Illinois. Finally, the plaintiffs are citizens of Illinois. Together these factors outweigh those favoring the application of Georgia law to the tort claims—some of the tortious conduct originated in Georgia, and ISACOMM and US Sprint's principal places of business were in Georgia.

---

**5.** Since diversity of citizenship supports our jurisdiction over these claims, they withstand dismissal of the federal RICO claim.

**6.** The Landons incorrectly presume that the conflicts rules governing breach of contract actions apply to the misrepresentation counts and

accordingly contend that Georgia, the place of contract formation, provides the governing law. Since these are tort actions, the situs of contract formation is not determinative, but is relevant only to the extent that it may establish the location in which the tortious conduct occurred.

■] Count IV, the claim of breach of covenant of good faith and fair dealing, is essentially a breach of contract claim which, under Illinois law, is governed by the law of the forum provided in the contract unless the pertinent laws of that forum violate the public policy of Illinois. *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454, 458 (1975). The parties provided in the Services Agreement, the contract that forms the basis of Count IV, that

> This Agreement shall be construed under and enforced in accordance with, and the validity and performance hereof shall be governed by, the laws of the State of Georgia.

Defendants do not contend, and we see no basis to conclude, that Illinois public policy is disserved by applying Georgia law in this situation. Accordingly, the contractual choice-of-law provision controls, and Georgia law governs Count IV.

### B. Fraudulent Misrepresentation

■] To state a claim of fraud under Illinois law, the Landons must allege with particularity that they were injured as a result of their justifiable reliance upon a false statement of material fact made by the defendants with fraudulent intent that the defendants knew or believed to be false. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 370 n. 2 (7th Cir.1988). The Landons charge that they reasonably relied to their detriment on defendants' misrepresentations (1) as to the favorability of current and projected public use of Meeting Channel facilities and projected revenues from participation as a broker and, later, as a host and (2) of their intentions to establish numerous facilities across the country and, specifically, at the Olympia & York Centre in Chicago and later to provide marketing and technical assistance.

Defendants challenge the sufficiency of the allegations of this claim on the grounds that the alleged misrepresentations are merely predictions and promises which are nonactionable under Illinois law. We disagree. In at least two instances, the alleged representations were not predictions but statements of present fact—that defendants were unable to determine with any precision the current public use of Meeting Channel facilities but that such use was favorable.[7] Further, while Illinois courts have disfavored promissory fraud claims, they are still allowed when the promises "are alleged to be part of a larger scheme to defraud the plaintiff." *Hindley v. Seltel, Inc.*, 672 F.Supp. 1093, 1096 (N.D. Ill.1987); *Serig*, 581 F.Supp. at 579. The alleged promises to provide Meeting Channel facilities and assist in EMI operations were not isolated but occurred throughout the parties' four-year relationship and in conjunction with the false projections. It is for the trier of fact to determine whether such false promises were part of a larger scheme supporting a finding of fraud.

Defendants additionally contend, and we agree, that the Landons have failed to allege that defendants knew or believed the representations to be false. Under Illinois law, a fraud claimant must allege "specific, objective manifestations of fraudulent intent—a scheme or device." *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F.Supp. 1366, 1369 (N.D.Ill.1985). It can be fairly inferred from the survey allegations that defendants knew that the representations as to current public use and their ability to determine that use were false. However, the fraud claim hinges on the other representations of false projections and promises, and the Landons allege only that ISACOMM "knew or should have known" that those representations were false. Such allegations are insufficient to plead scienter and intent. *Polivka v. Worth Dairy, Inc.*, 26 Ill.App.3d 961, 328 N.E.2d 350, 354 (1st

---

**7.** We reject defendants' contention that the complaint fails to establish that these representations were anything more than nonactionable puffing. In conjunction with the survey which allegedly demonstrated that then-current use was unfavorable, a trier of fact could reasonably conclude that the representations were "intended as statement[s] of present fact" rather than merely "prophec[ies] of future developments or expression[s] of opinion relating to expectations or contingent events." *Younger v. Revelle*, 78 Ill.App.3d 1, 33 Ill.Dec. 888, 890, 397 N.E.2d 221, 223 (5th Dist.1979).

Dist.1974); *Davis v. Nehf,* 14 Ill.App.3d 318, 302 N.E.2d 382, 388 (1st Dist.1973). For this reason, we dismiss the claim of fraud.[8]

### C. Negligent Misrepresentation

■ Under Illinois law, a plaintiff can maintain an action for negligent misrepresentation only if there are allegations stating or suggesting that the defendant is in the business of supplying the information at issue to others for guidance in their business transactions. *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1563–65 (7th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988); *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.,* 109 Ill.App.3d 132, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1st Dist.1982). The complaint lacks any allegation that US Telecom, GTE, ISACOMM or US Sprint are or were in such a business, and it is fairly evident that the Landons could not make such an allegation in an amended complaint. Accordingly, we dismiss the negligent misrepresentation claim with prejudice.

### D. Breach of Covenant of Good Faith and Fair Dealing

■ The Landons charge in Count IV that defendants breached the Services Agreement's implied covenant of good faith and fair dealing. A number of jurisdictions including Illinois, disallow an independent cause of action for recovery for breach of this implied covenant. A party to a contract can enforce the covenant only in the context of an action charging the breach of an express duty under the contract. *See, e.g., Martin v. Federal Life Insurance Co.,* 109 Ill.App.3d 596, 65 Ill. Dec. 143, 440 N.E.2d 998 (1st Dist.1982). Neither the Georgia Supreme Court nor

any other Georgia court has recognized or rejected an independent cause of action to enforce the implied covenant.[9] In the absence of a dispositive holding of the Georgia Supreme Court, we would ordinarily predict whether that court would recognize the cause of action. *See, e.g., Barry Gilberg, Ltd. v. Craftex Corp.,* 665 F.Supp. 585, 595 (N.D.Ill.1987). We are offered some guidance from a federal court in Georgia which concluded that the Georgia Supreme Court would not recognize the cause of action if confronted with the issue. *Management Assistance, Inc. v. Computer Dimensions, Inc.,* 546 F.Supp. 666, 677 (N.D.Ga.1982), *aff'd,* 747 F.2d 708 (11th Cir.1984). While not binding, this decision is highly persuasive since that court is presumably well-versed in Georgia law. *Collins Co., Ltd. v. Carboline Co.,* 837 F.2d 299, 301 (7th Cir.1988). In the absence of any authority to suggest that the Georgia Supreme Court would disagree, we adopt the *Management Assistance* decision and accordingly dismiss Count IV.

### IV.

### Sanctions

■ Defendants move for an award of costs and fees incurred in pleading to the negligent misrepresentation and breach of implied covenant claims which they contend were unsupported by the law. The federal rules provide that the court may appropriately sanction an attorney or party that files a pleading or motion that is not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. In determining whether an attorney was objectively reasonable in its propositions of law supporting a claim or position, we consider

---

**8.** As we noted in relation to the RICO claim, there are no allegations linking the named defendants to the alleged misrepresentations of ISACOMM and US Sprint employees, and we dismiss Count II on this basis as well. Again, the Landons advance, without providing any basis in Illinois law, the joint venture theory. The complaint does not set forth any allegations establishing a joint venture relationship among US Telecom, GTE and ISACOMM.

**9.** In support of their contention to the contrary, plaintiffs cite a number of Georgia decisions recognizing that contracts generally contain an implied covenant of good faith. These decisions do not, however, recognize an independent cause of action for breach of that implied covenant.

the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law. *Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1435 (7th Cir.1987).

Under these guidelines we find that the Landons' maintaining Counts III and IV does not constitute a violation of Rule 11 and accordingly deny sanctions.

Defendants are correct that even the most cursory research would have revealed to the Landons that Illinois law bars the negligent misrepresentation claim. Indeed, in *National Union Fire Insurance Co. v. Continental Illinois Corp.,* 654 F.Supp. 316, 317–18 (N.D.Ill.1987), the district court imposed sanctions on a party that filed a negligent misrepresentation claim without alleging that the defendant was in the business of supplying information to third parties. However, the Landons are equally correct that Georgia law does not impose a similar bar to their claim. *Robert and Company Assoc. v. Rhodes–Haverty Partnership,* 250 GA. 680, 300 S.E.2d 503, 504 n. 1 (1983) (recognizing as actionable a claim arising out of "any transaction in which [the defendant] has a pecuniary interest"). Therefore, sanctions are inappropriate if the Landons were objectively reasonable, albeit incorrect, in presuming that Georgia law governed their tort claims. We find that they were.

To support their contention that Georgia law controls, the Landons relied on the authority of three cases that indicated that the Illinois conflicts rules of contract actions determine the governing law in a misrepresentation action that arises from a contractual relationship. *Van Gelder v. Taylor,* 621 F.Supp. 613, 620 (N.D.Ill.1985);

*Environmental Services, Inc. v. Bell Lumber and Pole Co.,* 607 F.Supp. 851, 855 (N.D.Ill.1984); *Hotel Constructors, Inc. v. Seagrave Corp.,* 543 F.Supp. 1048, 1052 (N.D.Ill.1982). While we disagree with the stated propositions of law in the pertinent excerpts from those cases, we cannot sanction the Landons for following them.[10] Thus, the Landons were objectively reasonable in contending that contracts rules apply and that Georgia law governs based on the choice-of-law provision in the Services Agreement and the fact that the contracts were formed in Georgia.

Nor did the Landons violate Rule 11 in bringing the breach of implied covenant claim. As we indicated, the Georgia Supreme Court has not provided definitive guidance on this issue. The Landons directed our attention to a number of cases which identified a modern trend in contract law to recognize the claim as an independent cause of action. *E.g., Reid v. Key Bank of Southern Maine, Inc.,* 821 F.2d 9, 13 (1st Cir.1987); *Colorado Interstate Gas v. Natural Gas Pipeline Co.,* 661 F.Supp. 1448, 1474 (D.Wyo.1987). While we found *Management Assistance* persuasive and accordingly dismissed the claim, we were not bound to follow that decision, and the Landons were not unreasonable in seeking our rejection of it. In such an instance, sanctions are inappropriate.

### V.

### Conclusion

Counts I and II are dismissed without prejudice.[11] Counts III and IV are dismissed with prejudice. The motion for sanctions is denied. It is so ordered.

---

**10.** Our inquiry under Rule 11 focuses on the arguments actually advanced by counsel, not arguments that could have been advanced in support of their position. *S.A. Auto Lube, Inc. v. Jiffy Lube International, Inc.,* 842 F.2d 946, 950 (7th Cir.1988).

**11.** In the event the Landons are convinced that they are able to cure the deficiencies in the

RICO or fraud claim as set forth in this opinion, they are given ten days within which to file an amended complaint. However, plaintiffs are advised that the filing of a rehashed version of a dismissed claim without curing the defects we have outlined may subject them to Rule 11 sanctions. Defendants are given ten days thereafter to answer or plead otherwise.