Nicholas C. **JANNOTTA**, Plaintiff,

v.

Roderick R. **KIRKWOOD** and John Graham, Defendants.

No. 88 C 2003.

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1988.

James A. Christman, Wildman Harrold Allen & Dixon, Chicago, Ill., for plaintiff.

Roger J. Guerin, Alan S. Madans, Rothschild Barry & Myers, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Nicholas Jannotta seeks recovery of money allegedly due and owing under a May 8, 1987 brokerage agreement with defendants Roderick Kirkwood and John Graham. By the terms of the agreement, Jannotta agreed to assist in the sale of defendants' land in Schaumburg, Illinois, to the Metropolitan Sanitary District ("MSD") in return for 2½% of the amount paid by the MSD as purchase price or condemnation award. On December 7, the MSD purchased the land from defendants for $18,650,000. Defendants paid Jannotta $366,250, $100,000 less than the $466,250 that Jannotta demanded as 2½% of the purchase price. Jannotta filed this action to recover the $100,000. In their answer, defendants deny that the agreement constituted an enforceable contract and additionally plead two affirmative defenses and a counterclaim. Jannotta has filed a motion to dismiss the defenses and counterclaim which, for the following reasons, we grant.

### First Affirmative Defense

In their first affirmative defense, defendants charge Jannotta with fraud in the inducement of the brokerage agreement. On October 31, 1986, prior to their agreement with Jannotta, defendants entered into an exclusive brokerage agreement with Royal LePage Services ("Royal") by which Royal would sell the parcel of land with Jannotta's assistance, and Jannotta would receive a certain percentage of the commission that defendants paid to Royal. At some unspecified time in early 1987, Jannotta suggested to defendants that they terminate their agreement with Royal because Royal was not interesting MSD in the property. Defendants terminated the agreement with Royal and hired the services of another broker, Eugene Golub, as well entering into the agreement with Jannotta. Unbeknownst to defendants, Jannotta continued to work with Royal in arranging a deal with the MSD and encouraged Royal to discontinue all contacts with MSD. After MSD purchased the property on December 7, Royal demanded its commission under the exclusive brokerage agreement and threatened to sue the defendants and Jannotta. Defendants settled with Royal for $300,000.00.

In moving to dismiss this defense, Jannotta contends that defendants have failed to allege fraud with the particularity required under Fed.R.Civ.P. 9(b). We agree. Our decisions make clear that a party must support any charges of fraud, whether in a complaint or affirmative defense, with specific allegations of the acts comprising the fraud:

> In describing the circumstances constituting fraud, the plaintiff must describe the "time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby." (Citations omitted).

*D & G Enterprises v. Continental Illinois National Bank,* 574 F.Supp. 263, 267 (N.D. Ill.1983). *See also Landon v. GTE Communications Services, Inc.,* 696 F.Supp. 1213, 1217–18 (N.D.Ill.1988); *Balabanos v. North American Investment Group, Ltd.,* 684 F.Supp. 503, 506 (N.D.Ill.1988). This requirement represents our balancing the liberal mandate of Rule 8 that pleadings need only put a party on notice of the charges against it and the more specific dictates of Rule 9(b) that serve to assure that the claim has some merit. 5 Wright & Miller, *Federal Practice and Procedure* § 1298, 408–13 (1969).

Defendants have not met this burden of pleading. While they have set forth generally actions by Jannotta that constituted the fraud, such as working with Royal without the defendants' knowledge and encouraging Royal to cease all contacts with the MSD, they have not provided sufficient detail. It is not clear from the allegations the specific acts by which Jannotta perpetrated a fraud in inducing defendants to enter into the brokerage agreement—when Jannotta communicated what and to whom that led defendants to enter into the agreement. Indeed, while we may surmise how these actions by Jannotta actually induced defendants (leading defendants to believe

that Royal had no rights as broker arising out of any later deal with the MSD), the allegations do not make the logical nexus clear. Accordingly, we dismiss the first affirmative defense.

### Second Affirmative Defense

In their second affirmative defense, defendants allege that Jannotta cannot recover since defendants have already covered any obligations to Jannotta by virtue of the settlement payment of $300,000 to Royal which included Royal's claims against Jannotta. The allegations do not set forth the theory under which this defense is maintained. Jannotta contends that defendants seek to charge Jannotta with intentional interference with a contractual relationship which may only be brought as a counterclaim. We see no basis for this reading of the defense. The reference to intentional interference occurs only in the allegation that defendants settled Royal's asserted intentional interference claim against Jannotta. We view this defense instead as a set-off from liability. However, a claim for set-off is an independent claim and as such must be pled as a counterclaim. *First National Bank v. Master Auto Service Corp.,* 693 F.2d 308, 310 n. 1 (4th Cir.1982). Accordingly, we dismiss the second affirmative defense.[1]

### Counterclaim

In their counterclaim, defendants allege that the same facts that form the basis of their affirmative defenses support a finding that Jannotta is liable for indemnification for a portion of the Royal settlement. Jannotta contends, and defendants concede, that a claim for indemnification arising out of tortious conduct are not available under Illinois law.[2] *Allison v. Shell Oil Company,* 113 Ill.2d 26, 99 Ill. Dec. 115, 495 N.E.2d 496 (1986). Defendants respond that they are actually seeking contribution. If that is the case, they have not sufficiently pled a claim for contribu-

---

1. Jannotta additionally contends that a set-off claim would be redundant of the counterclaim for contribution. We disagree. As discussed in the next section, the counterclaim for contribution requires as a prerequisite to recovery that defendants prove they paid more to Royal than

they were potentially owed. A set-off claim may not be so limited.

2. The parties agree that Illinois law governs the substantive issues in this lawsuit.

tion. Under the Contribution Among Tortfeasors Act of 1979, the source of any claim for contribution under Illinois law, "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability." Ill.Rev.Stat. ch. 70, ¶ 302(b). Thus, the party seeking contribution must allege that he had paid in excess of his portion of liability. *Houser v. Witt*, 111 Ill.App.3d 123, 66 Ill.Dec. 799, 443 N.E.2d 725, 801 (4th Dist.1982). Defendants do not allege that the $300,000 that they paid to Royal is more than their equitable share of liability. Accordingly, the counterclaim is dismissed.

### Conclusion

Defendants have attempted to set forth defenses and counterclaims to Jannotta's breach of contract claim, but each is fatally defective in form or substance. We accordingly dismiss the counterclaim and both affirmative defenses. If they so choose, defendants may amend their pleadings within ten days if they determine that they are able to cure the deficiencies as set forth in this opinion. It is so ordered.