# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1546

DANIEL L. SMOCK,

*Plaintiff-Appellant,*

v.

SAMUEL W. NOLAN, individually and
TERRANCE G. MCCANN, individually,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 00 C 1241—**Michael M. Mihm**, *Judge.*

_____

ARGUED NOVEMBER 5, 2003—DECIDED MARCH 16, 2004

_____

Before FLAUM, *Chief Judge*, and BAUER and WILLIAMS,
*Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff Smock brought this suit
claiming that he was wrongfully discharged as a result of
his First-Amendment-protected speech; that he had been
defamed by the defendants, and that the defendants in-
tentionally interfered with a contractual relationship. The
district court granted summary judgment against him. He
appealed. Because Smock has failed to create a genuine
issue of material fact, we affirm.

## I. Background

On April 4, 1999 Daniel Smock became an Illinois State Police cadet. This was not his first experience in law enforcement. Between 1996 and 1999, Smock served as an auxiliary police officer for the City of Canton. In that capacity, Smock was on patrol with Lieutenant David Ayers one September night in 1998. At some point, the Ayers/ Smock patrol came across two other Canton City Police officers, Sergeant Richards and Officer Graham, who were engaged in a traffic stop. Ayers apparently noticed that Richards and Graham were using their flashing yellow lights in conjunction with their mars lights—a violation of department procedure. Over the radio, Ayers directed the other officers to turn off their yellow lights.

Later that same night, Ayers and Smock again came across Sergeant Richards and Officer Graham. The Richards/Graham patrol was engaged in another traffic stop where they were using the yellow flashing lights in conjunction with the mars lights again. Ayers told the other officers something like "don't you guys get the clue [about using the yellow lights?]" After being told that the Richards/Graham patrol did not need assistance with the traffic stop, Ayers and Smock drove away.

Sometime after this incident, Ayers had formal disciplinary charges filed against him. One of those charges related to whether Ayers had sworn at Richards during the second traffic-stop incident. Smock testified that Ayers did not use profanity or act in a degrading manner towards Richards or Graham. Canton Police Lieutenant Dean Putman however, claimed that Smock had said during an interview that he did hear Ayers swear at Richards. This claim of a prior inconsistent statement was ultimately reported to the Illinois State Police, who initiated an investigation into the matter.

Sergeant Eric Hall of the Illinois State Police Division of Internal Investigations investigated the case against Smock. After reviewing the transcripts of the disciplinary hearing and conducting various interviews, Hall suggested that Smock take a polygraph exam. Smock agreed.

On August 26, 1999, Smock submitted to a polygraph examination conducted by defendant Terrance G. McCann at the Illinois State Police Forensic Crime Laboratory. McCann, who had been trained in the Reid approach to lie detector scoring, has been a licenced polygraph examiner since 1976. After scoring the exam, McCann determined that Smock was untruthful when answering the relevant questions.

The entire file, including the polygraph results, was sent to Deputy Director Harold Nelson. Nelson reviewed the file with an eye towards "integrity and truthfulness." In the words of the defendant's brief, "Nelson considered it significant that Putman and Richards had higher, more responsible positions and were attesting to and agreeing upon the same allegation." (Br. Defendants-Appellees at 13) (internal brackets and quotation marks omitted.) Nelson recommended that Smock be terminated—a decision he says was partially based on the polygraph results, but one he probably would have reached without the lie detector result. Nelson's boss, Director Nolan, accepted the recommendation and fired Smock.

Smock later applied for a position with the Peoria County Sheriff. That office conducted a pre-employment polygraph examination in which Smock was asked about the facts and circumstances surrounding his termination from the Illinois State Police. That polygraph indicated truthfulness on the matters that McCann's exam indicated deception.

For the purposes of this litigation, Smock retained Charles Honts, Ph.D. (Honts) for his expert opinion about the polygraph examinations. Honts, a Professor of

Psychology at Boise State University, challenged McCann's conclusion on two separate grounds. First, he rescored McCann's examination using the University of Utah scoring system. In doing this he found, in the words of Smock's brief, "gross discrepancies from standard numerical scoring practice." (Brief of Appellant-Plaintiff at 16.) By adding the individual scores of the four relevant questions, which McCann concedes is an appropriate method of scoring, Honts came up with +10 whereas McCann's score of the same exam was -24.[1] Second, Honts conducted a scientific study of McCann's scoring system, i.e., the Reid approach, and found it lacking. He claimed that McCann's exam was therefore, biased toward a finding of deception. McCann's exam, when scored using the University of Utah system, showed Smock's truthfulness.

Finally, Smock points to a portion of McCann's deposition as the evidence most damning to the defendants. McCann claimed that he neither inadvertently nor negligently mis-scored Smock's polygraph examination. According to Smock, the only reasonable inference which flows from such an "admission" is that McCann intentionally mis-scored the exam.

In the Order granting summary judgment, the district court assumed that Smock's testimony at the disciplinary hearing was protected speech under the First Amendment. To sustain his claims, the district court said, Smock was required to create a genuine issue of material fact as to whether McCann intentionally lowered Smock's score. The court did not find sufficient evidence in the record to create such a genuine issue of material fact.

---

[1] Positive numbers tend to show truthful responses whereas, negative numbers tend to show deception. If a resulting score is close to zero, -1 or +2 for instance, the result is deemed inconclusive.

## II. Discussion

We review the district court's grant of defendant's motion for summary judgment de novo and consider all evidence in the light most favorable to the non-moving party. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Speculation and conjecture are insufficient to defeat a motion for summary judgment. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

### A. 42 U.S.C. § 1983 Claim

To prevail on his section 1983 claim, Smock must show that the speech in question is protected under the *Connick*[2] test and that this speech was a motivating or substantial factor in the decision to terminate him. *Mt. Healthy City Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Wright v. Illinois Dep't of Children and Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). If he can make such a showing, the burden shifts to the employer to show, by a preponderance of the evidence, that the employee would have been terminated absent the protected speech. *Id.*

We assume, without deciding, that Smock's testimony at the disciplinary hearing was protected speech. Therefore, we move to the second element which addresses the question of whether Smock's protected speech was the motivating factor for his termination.

Whether Smock was fired as a result of his protected speech really turns on the question of whether McCann intentionally mis-scored Smock's exam to provide ammunition for the termination. If McCann did not intentionally

---

[2]  *Connick v. Meyers*, 461 U.S. 138 (1983).

mis-score the exam, then Smock's claim dies for one of two reasons: (1) Smock lied and therefore, his speech is not protected, *Wright*, 40 F.3d at 1505, or (2) the investigation was reasonable and therefore, not actionable under *Waters*, *Waters v. Churchill*, 511 U.S. 661, 679 (1994) (stating that the Court has "never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information"). So, we turn to the evidence of record to see if Smock provided enough to create a genuine issue of fact as to whether or not McCann intentionally mis-scored Smock's polygraph charts.

Smock claims two portions of the record support his allegation that McCann intentionally mis-scored his test results. First, he points to Honts' opinion that McCann's examination was biased towards a finding of deception. Despite this bias, says Honts, Smock's chart from the McCann exam shows truthfulness. Second, Smock notes that McCann disavowed any negligence or inadvertence in scoring the exam. Smock argues that the only reasonable inference left is that McCann intentionally mis-scored the exam. While we follow the logic of Smock's argument, we find it unpersuasive.

There is no evidence that supports the premise that McCann intentionally mis-scored Smock's exam. Plaintiff claims his inference argument creates a genuine issue of material fact. While the logic of the argument is superficially attractive, its lack of factual support makes such a finding decidedly *un*attractive. There is simply no probative evidence going to show that McCann did in fact intentionally mis-score the exam.

Smock presented no evidence that McCann had any interest in Smock's termination or that McCann used a different method of scoring Smock's exam than he would have used in scoring any other exam. He has shown no

evidence that the outcome of the polygraph examination was predetermined. Instead, Smock points to the "suspicious circumstances surrounding the entire investigation." (Brief of Appellant-Plaintiff at 27.) As an example of these "suspicious circumstances," Smock claims that the issue of whether he lied while testifying at a disciplinary hearing is not material to his qualifications to be a police officer. So, the investigation itself shows some ulterior motive. These circumstances are hardly suspicious. Obviously, a police employer has a very real interest in the truthful character of its police-officer employees.

Similarly, Honts' opinion does not support Smock's contention that McCann intentionally mis-scored the polygraph charts. Honts' report states, "[i]t is my opinion that the McCann Examination represents a polygraph examination conducted to minimum acceptable standards of the polygraph profession." (App. 6, pp. 5-6.) Furthermore, he noted that the Reid Approach, the method used by McCann, has been criticized and, in the words of Smock's brief to this court, "Honts conducted a scientific study of the reliability of the Reid approach and found it lacking." Honts explicitly refused to opine whether McCann intentionally or unintentionally mis-scored the exam. At best, Honts' opinion casts some doubt on the reliability of the Reid method of polygraph examination.

### B.  State Law Claims

#### 1.  Defamation

To prevail on a state law claim for defamation a plaintiff must show that: (1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication of the defamatory statement to a third party by the defendant, and (3) the plaintiff has suffered damages. *Gibson v. Philip Morris, Inc.*, 685 N.E.2d 638, 643 (Ill. App. Ct. 1997). Because McCann had a duty to report the results

of the polygraph examination to his Illinois State Police superiors, the communication is protected by a qualified privilege. *Kuwik v. Starmark Star Mktg. and Admin., Inc.*, 619 N.E.2d 129, 134 (1993). Smock concedes that McCann is covered by the qualified privilege.

In general terms, overcoming the qualified privilege requires a showing that the defendant "either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's false- ness." *Id*, at 133. Specifically, Smock must show the very same thing he had to show for the federal claim above: that McCann intentionally mis-scored the polygraph exam. The lesser showing of "reckless disregard" to the truth of the matter might be shown by presenting evidence that McCann has serious doubts about the accuracy of the polygraph score but no such evidence is present.

So Smock's state law claim of defamation meets the same fate as his federal claim. There is no evidence to support the claim of intentional mis-scoring, nor is there evidence which tends to show that McCann acted with reckless disregard as to the accuracy of his polygraph results. We affirm the district court's disposition of Smock's defamation claim.

### 2.   Intentional Interference with a Contractual Relation- ship

In order to prevail on a state claim for intentional in- terference with a contractual relationship, the plaintiff must show that: (1) there was an enforceable contract, (2) the defendant was aware of that contract, (3) the defendant intentionally and unjustifiably induced a breach of the contract, (4) breach resulted from the defendant's wrongful conduct, and (5) the plaintiff has been damaged. *HPI Health Care Serv., Inc. v. Vernon Hospital, Inc.*, 545 N.E.2d 672, 676 (1989). Again, Smock must produce some evidence showing that McCann intentionally mis-scored his poly-

graph exam. Smock has failed to show such an intention and therefore, this claim fails too.

AFFIRMED

A true Copy:

Teste:

_____
***Clerk of the United States Court of Appeals for the Seventh Circuit***