# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2777

DIANE SMITH,

*Plaintiff-Appellant,*

v.

STEPHANIE DUNN, individually and as
principal of Edmund Burke School, and
CHICAGO SCHOOL REFORM BOARD OF TRUSTEES,[1]

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8520—**James B. Moran**, *Judge.*

_____

ARGUED FEBRUARY 11, 2004—DECIDED MAY 11, 2004

_____

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Plaintiff Diane Smith brought this
action under 42 U.S.C. § 1983 against defendants Stephanie
Dunn and the Chicago School Reform Board of Trustees,

_____

[1] The Chicago School Reform Board of Trustees is now known
simply as the Chicago Board of Education.

alleging violations of her rights of free speech and association pursuant to the First and Fourteenth Amendments of the United States Constitution. The district court found that Smith failed to raise a genuine issue of material fact as to whether the discipline imposed on her by Dunn was motivated by Smith's speech. The court therefore granted summary judgment to Dunn and the Board. We affirm.

## I. History

Smith, a Board employee in the Chicago public school system since 1974, taught fifth grade at Burke Elementary School from 1997 until she retired in June of 2002. Dunn has served as principal at Burke Elementary since July of 1998. Dunn reprimanded and disciplined Smith on several occasions beginning in the 2000-01 school year. The motivation for Dunn's actions is the issue in this case.

The first conflict between Smith and Dunn arose after Smith failed to submit electronic grades in September of 2000. On September 18, before any of Smith's allegedly protected speech had occurred, Dunn sent Smith a memorandum reminding Smith of the change in school policy (paper grade books were previously acceptable for submission). Smith wrote on the bottom of the memorandum, which she returned to Dunn, that she had "no plans of using computerized grades . . . [i]t is not a priority." In addition to this reminder, Dunn warned Smith in October that she must comply with the electronic grade policy or be subject to discipline. Ultimately, Dunn conducted a hearing on November 10, 2000 that resulted in Smith serving a one-day suspension after she continued to refuse to comply with the policy. Dunn testified that the reason for this suspension was Smith's failure to submit electronic grades.

Dunn also disciplined Smith for the stated reason that Smith allegedly failed to properly supervise her students on

several occasions. Office staff had reported that Smith was not in the classroom when they attempted to reach her; the students had to answer the calls made to Smith through the intercom system. Dunn issued a written warning on December 8, 2000, informing Smith that she had twice left her students unattended. The warning noted that negligent supervision "may result in disciplinary action that could include suspension . . . ." Dunn, initiating disciplinary proceedings on February 23, 2001, suspended Smith for two days after Dunn found Smith's students unattended for a third time. Smith appealed this suspension, but the Board's hearing officer upheld the punishment.

Most seriously, a student and her mother accused Smith of physically abusing the student during a fifth-grade class session. The student alleged that Smith, angry because she thought the student was talking, grabbed her by the neck and forced her to her feet. Next, Smith allegedly grabbed the student's arm and pulled the student outside the classroom. Dunn removed Smith from the classroom during the investigation of this incident. She was assigned to work for the assistant principal for several months so that she did not come into contact with children. Although the Illinois Department of Children and Family Services and the State's Attorney declined to prosecute Smith, she was suspended for five days in September 2001 after a Board investigation.[2]

---

[2] "Because of differing legal standards and responsibilities, the Chicago Public Schools reserves the right to discipline employees for allegations of child abuse or neglect which are substantiated by CPS investigations, even if these allegations are determined 'unfounded' by IDCFS." Chicago Public Schools Policy, Section 511.1, *available at* http://policy.cps.k12.il.us/. Moreover, the Board is not required to prove allegations beyond a reasonable doubt as

(continued...)

Besides these three substantial punishments, there were three additional reprimands issued to Smith by Dunn during Dunn's tenure as principal. The first was a memorandum issued on September 25, 2000, reminding Smith to sit at the lunch table with her students. The second memorandum, written in January 2002, reprimanded Smith for again failing to submit her electronic grade book in December of 2001. The third memorandum, written on February 6, 2002, informed Smith that the bulletin board she had been assigned to decorate by February 1 was still bare.

Contrary to the stated justifications for each of the punishments and reprimands listed above, however, Smith asserts that Dunn's treatment of her was motivated by a desire to stop Smith from expressing herself on matters of public concern. Along with her teaching duties, Smith participated in the Professional Personnel Advisory Committee ("PPAC"). PPAC advised Dunn and the Local School Committee ("LSC"), a body that makes policy for Chicago public schools. At an LSC meeting in October of 2000, Smith expressed concerns about a lack of textbooks and other materials at Burke Elementary. Smith alleges that Dunn was very irritated by this criticism of her management of the school. Smith also alleges that Dunn told the school engineer to turn the lights off before Smith was finished speaking and the public participation portion of the LSC meeting had ended. Smith speculates that Dunn did this to silence Smith and others waiting to comment on the textbook difficulties, although the lights were turned back on after it became apparent that individuals still wished to speak.

---

(...continued)
the State's Attorney would if criminal charges had been brought. *See Bd. of Educ. v. State Bd. of Educ.*, 497 N.E.2d 984, 993 (Ill. 1986).

In January of 2000, Smith ran for a position on the LSC. The school held a "non-binding poll" to determine which teacher would represent it at the LSC. Smith contested the results; she lost by one vote to another Burke teacher. Smith criticized Dunn's management of the poll because Dunn, complying with what she thought were the rules set forth by the Board, withheld the results of the election until they were certified by the Board. Smith also criticized the actions of Board member William Davis, who monitored the poll.

Smith filed the lawsuit against Dunn and the Board under 42 U.S.C. § 1983 on November 6, 2001. Smith alleged that Dunn and the Board (through Dunn's creation of policy) unlawfully retaliated against her because she complained about the lack of textbooks in October of 2000 and the perceived irregularities in the teacher representative election in January of 2000. The district court granted the defendants' summary judgment motions and Smith appealed.

## II. Analysis

We review de novo a grant of summary judgment; in doing so, we construe all facts in favor of the non-moving party. *See Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003).

To state a claim under 42 U.S.C. § 1983 for retaliation based upon the First Amendment, Smith must show that: (1) her speech was constitutionally protected; and (2) Dunn's actions were motivated by Smith's constitutionally

protected speech. *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002). If Smith establishes the two prongs of the analysis, the burden shifts to Dunn to prove that Smith would have been disciplined regardless of the protected speech. *Id.* If Dunn carries that burden, Smith bears the burden of persuasion to show that Dunn's proffered reasons were pretextual and that discrimination was the real reason for the discipline. *Id.*

We agree with the district court that Smith's failure to establish the second prong of *Vukadinovich*—whether her speech was a "substantial factor" or a "motivating factor" for the disciplinary actions taken by Dunn—is dispositive in this case. *See Pugh v. City of Attica*, 259 F.3d 619, 629-30 (7th Cir. 2001); *see also Smock v. Nolan*, 361 F.3d 367, 370-72 (7th Cir. 2004). Because Smith has failed to establish a genuine issue as to Dunn's motivation, we need not address whether her speech was constitutionally protected, *see Sullivan v. Ramirez*, 360 F.3d 692, 697-703 (7th Cir. 2004), or whether the Board could have been held liable in this case for the actions of Dunn, *see Rasche v. Village of Beecher*, 336 F.3d 588, 597-601 (7th Cir. 2003).

Smith primarily argues that because her uncontradicted affidavit states that she had never been disciplined during her teaching career prior to the 2000-01 school year, the year in which she both publicly criticized Dunn and was subjected to multiple acts of discipline, there must be an issue for trial on Dunn's motivation for the discipline. Suspicious timing, however, is not enough to establish that speech was a motivating factor for the discipline imposed by Dunn. *See Pugh*, 259 F.3d at 630.

Indeed, in this case, the timing is not very suspicious. Each suspension and reprimand followed well-documented cases of misconduct or insubordination. The reprimands delivered in September of 2000 came before Dunn had expressed her views on the textbook issue at the LSC meeting

in October. Moreover, the discipline imposed during the 2001-02 school year, including the five-day suspension for the student-abuse incident, came long after Smith's criticism of the textbook situation and her failed bid for a position on the LSC in January of 2000. There is a closer temporal link between the speech and the November of 2000 and February of 2001 suspensions. But this suspicious timing by itself cannot create a genuine issue of material fact.

Smith's additional arguments also fail to demonstrate that Dunn was retaliating against her for her speech rather than legitimately punishing her for misconduct. For one, Smith claims that she was singled out for discipline while other teachers who also failed to turn in grade books or monitor their students were not disciplined. But the record does not support this contention. The only evidence for this assertion, Smith's affidavit, relies on hearsay evidence (purported declarations by another teacher that she had turned in late grade books without being disciplined) and provides no specific details to show that Smith and the teachers she cites were similarly situated (such as when the alleged improprieties by the other teachers occurred, whether Dunn was aware of them, whether those teachers were subject to the same requirements, and whether the circumstances in the other teachers' actions were similar to those for which Smith was punished).

Finally, Smith attempts to establish Dunn's motivation by denying that she made physical contact with the child involved in the abuse allegations and quibbling over the proper characterization of her other misconduct and insubordination. Dunn's *motivation*, however, not the proper factual understanding of Smith's performance, is the issue. *See Smock*, 361 F.3d at 371 (citing *Waters v. Churchill*, 511 U.S. 661, 679 (1994), for the proposition that unintentional errors in assessing employees are not actionable under § 1983); *see also Jordan v. Summers*, 205 F.3d 337, 343 (7th

Cir. 2000) (noting that an employer's reasons for taking an adverse action may be "mistaken, ill considered, or foolish" so long as the employer "honestly believed" those reasons). Beyond conclusory allegations, Smith does nothing to show that Dunn invented Smith's misconduct or prompted the student and her mother to falsely testify that Smith abused the child.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*