Marilyn HARPER, Plaintiff–Appellant,

v.

MADISON METROPOLITAN SCHOOL
DISTRICT, et al., Defendants–
Appellees.

No. 03–2311.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 2004.

Decided Aug. 20, 2004.

Jeff Scott Olson, Madison, WI, for Plaintiff–Appellant.

David E. Rohrer, Michael J. Lawton, Lathrop & Clark, Madison, WI, for Defendants–Appellees.

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Marilyn Harper, an African American parent of two former students at Crestwood Elementary School in Madison, Wisconsin, sued the Madison Metropolitan School District and three of its employees under 42 U.S.C. § 1983 alleging violations of the Equal Protection Clause of the Fourteenth Amendment. She claimed that school officials engaged in racial discrimination by placing restrictions on her visits to and interactions with staff at Crestwood. The district court granted summary judgment in favor of the defendants, reasoning that Harper failed to establish that she was treated less favorably than similarly situated white parents. We agree and, therefore, affirm.

## I. BACKGROUND

Marilyn Harper is an African American school teacher in the Madison Metropoli-

tan School District (MMSD) in Madison, Wisconsin. Her two children, Emily and Elizabeth, were formerly students at Crestwood Elementary School, a school in the MMSD. Emily is Russian and Elizabeth is Guatemalan.

During the 1998–1999 school year, Emily was a student in Vicky Ackley's classroom at Crestwood. Harper twice observed Ackley's teaching style and, unsatisfied with the curriculum, the mode of instruction, and Ackley's disciplinary tactics, she met with Ackley and the school's then principal, defendant Mary Manthey–Roberts, to discuss her concerns. Harper reiterated her position in letters to Manthey–Roberts and in a meeting with the then assistant superintendent, defendant Shirley Baum. Ultimately, Harper requested that Manthey–Roberts assign Emily another classroom teacher, Diane Johnson. In late October 1998, Manthey–Roberts accommodated Harper's request.

Unfortunately, the new arrangement did not quell Harper's discontent. Harper was also dissatisfied with Johnson's teaching methods and she met with Johnson and Manthey–Roberts to address her concerns. Likewise, Johnson commented to Manthey–Roberts that, although she liked Emily, she felt incapable of "meet[ing] [Emily's] needs as her mother ha[d] described them without taking away from the other children" in the class. Johnson, therefore, asked that Emily once again be transferred to another teacher's classroom. Manthey–Roberts denied Johnson's request.

Soon thereafter, defendant Baum, the assistant superintendent of MMSD, met with approximately 15 Crestwood teachers, Manthey–Roberts, and John Matthews, Executive Director of Madison Teachers Inc., to discuss the teachers' concerns about Harper. Specifically, the teachers complained that Harper was intimidating,

impolite, and critical of their teaching styles. They also indicated that Harper frequently entered their classrooms unannounced and took an abundance of notes, giving the teachers the impression that Harper was evaluating them. The teachers also expressed concerns about the impact that Harper was having on Johnson's health.

Attempting to alleviate these concerns, in January 1999, Manthey–Roberts asked that Harper phone ahead before visiting Crestwood. When Harper asked what the consequence would be if she failed to call prior to visiting, Manthey–Roberts responded that there would be a response. After their conversation, Harper wrote Baum an emphatic letter, objecting to the restrictions that Manthey–Roberts placed on her visits and complaining about the manner in which her upcoming conference with her daughters' teachers would be conducted. Baum defended Manthey–Roberts, noting that Manthey–Roberts was attempting to ease the tension between Harper and Crestwood staff. Shortly thereafter, Harper visited Crestwood unannounced and Manthey–Roberts asked her to leave. Harper asked what would happen if she refused and, although she did not specify what action she might take, Manthey–Roberts responded that there would be a response. Eventually, Harper complied with Manthey–Roberts's request to leave.

Also during the 1998–1999 school year, Harper expressed her interest to Manthey–Roberts in participating in the Families and Students Together (FAST) program, a program that encourages parental involvement in students' education. Manthey–Roberts discouraged Harper from participating, noting that she thought Harper's participation could be disruptive. Later in the school year, Manthey–Roberts informed Harper that some parents complained about her participation in par-

ent-teacher organization (PTO) meetings and thus she suggested that Harper refrain from participating. After this conversation, Harper declined to attend future PTO meetings at Crestwood.

Although Crestwood teachers continued to complain to administrators about her behavior and Harper continued to send correspondence to Crestwood staff and MMSD board members discussing her concerns about her daughters' education, Harper contends that she did not have difficulties with Crestwood staff during the 1999–2000 or 2000–2001 school years. During the 2001–2002 school year, however, Harper was once again treated in what she considered to be an unfair manner.

That year, pursuant to Harper's request, Elizabeth was assigned to Terri Thomas's classroom. Emily was assigned to Peter Plane's classroom. Dissatisfied with certain aspects of the instruction Elizabeth was receiving, Harper solicited a meeting with Thomas and the then principal of Crestwood, defendant Elizabeth Fritz. According to Thomas, Harper was very critical of her during the meeting and Fritz did not come to her defense. Following the meeting, Thomas expressed her concern about Harper's behavior to Fritz. In turn, Fritz sent Harper a letter dated February 15, 2002, indicating that she wished to attend any subsequent meetings between Harper and Crestwood staff. In the same letter, Fritz said she wanted Henry Hawkins, a member of the MMSD parent liaison team, to attend all meetings between Harper and Thomas or Plane. Also during that year, Thomas and Plane initially gave Harper permission to have retired math professor, Richard Azky, come in and observe their classrooms. In the February 15 letter, however, Fritz revoked the consent, as Azky was a vocal critic of the MMSD math curriculum.

Shortly thereafter, Harper brought the present action under § 1983, alleging that the defendants engaged in racial discrimination in violation of the Equal Protection Clause by placing restrictions on her visits to Crestwood that were not placed on white parents. The district court granted summary judgment in favor of the defendants, finding that Harper failed to show similarly situated white parents who were treated more favorably than she. Harper appeals the grant of summary judgment.

## II. ANALYSIS

We review de novo a district court's grant of summary judgment, construing all facts in the light most favorable to the nonmoving party. *Smith v. Dunn,* 368 F.3d 705, 708 (7th Cir.2004).

A plaintiff alleging an Equal Protection violation under § 1983 must establish that she has been the victim of intentional discrimination using either the direct or indirect method of proof. *See Hildebrandt v. Ill. Dep't of Natural Res.,* 347 F.3d 1014, 1037–38 (7th Cir.2003) (recognizing that under both Title VII and § 1983 a plaintiff can establish intentional discrimination through either the direct method or the indirect method); *see also Ibarra v. Martin,* 143 F.3d 286, 291 (7th Cir.1998). Because Harper has not attempted to establish her case using the direct method, she must proceed under the indirect burden shifting method as outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To establish a prima facie case of discrimination under § 1983 and the Equal Protection Clause, Harper must show that: "(1) she is a member of a protected class, (2) she was otherwise similarly situated to members of an unprotected class, and (3) she was treated differently than members of the unprotected class." *Salvadori v. Franklin Sch. Dist.,* 293 F.3d 989, 997 (7th Cir.2002); *see also McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir.

1993). We agree with the district court that Harper cannot jump the similarly situated hurdle.

To satisfy the similarly situated prong, Harper must show that she is "directly comparable in all material respects" to another parent not in her protected class. *Wyninger v. New Venture Gear*, 361 F.3d 965, 979 (7th Cir.2004). Harper attempts to satisfy this requirement by comparing herself to three white parents of students at Crestwood, Kenneth Frankowski, Deborah Rice, and Elizabeth Cross, who also complained to school officials about various aspect of their childrens' education but did not have restrictions placed on their visits to the school. These parents, however, are not comparable.

None of the parents Harper compares herself to were the subject of multiple vigorous complaints by school staff members or, as school officials allege, other parents. In addition, Harper complained in a more strident fashion than the other parents: there is no indication that the parents to whom she compares herself wrote numerous emphatic letters to school officials, made repeated requests to transfer their children to alternative classrooms, entered classrooms without acknowledging the teacher, or attempted to have outsiders evaluate student instruction as Harper is alleged to have done. Given these significant differences, we agree with the district court that Harper is not similarly situated to her comparators and thus she has failed to establish a prima facie case of discrimination.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of the defendants.