In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-4254, 09-1030

JOSEPH KAMELGARD,

*Plaintiff-Appellant/Cross-Appellee,*

*v.*

JERZY MACURA,

*Defendant-Appellee/Cross-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 03211—**Suzanne B. Conlon**, *Judge.*

ARGUED SEPTEMBER 15, 2009—DECIDED OCTOBER 23, 2009

Before POSNER, FLAUM, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, a bariatric surgeon who lives and practices in New Jersey, brought this diversity suit in the federal district court in Chicago. He claims to have been defamed by the defendant, another bariatric surgeon, who practices in New York. The district judge dismissed the suit without prejudice, on the ground that venue in Chicago was improper, and the

plaintiff appeals. The defendant cross-appeals, claiming that the dismissal of the suit should have been with prejudice because the suit is time-barred. The cross-appeal is proper—and the plaintiff's challenge to it and his request for sanctions for the filing of the cross-appeal is frivolous and itself sanctionable—because it seeks relief beyond what the defendant obtained from the district court. *Greenlaw v. United States*, 128 S. Ct. 2559, 2564 (2008); *Stone Container Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 165 F.3d 1157, 1159 (7th Cir. 1999); *Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992).

The plaintiff had testified against the defendant in a malpractice suit in New York, and the defendant had retaliated—according to the plaintiff's complaint—by mailing a defamatory letter on or about March 1, 2006, to the American College of Surgeons, which is located in Chicago. The defendant had on that day mailed what the plaintiff believes to be an identical or nearly identical letter of complaint about the plaintiff's testimony to the American Society of Bariatric Surgeons (now the American Society for Metabolic and Bariatric Surgery), in Florida. *That* letter is in the record, but the letter to the American College of Surgeons (if there is such a letter) is not, and the plaintiff has seen neither the original nor a copy. On April 5, however, he received a letter from an official of the American College of Surgeons, notifying him that the College had received a complaint about his testimony as an expert witness in the New York malpractice suit against the defendant. But the letter did not identify the complainant.

The College's disciplinary committee assigned three bariatric surgeons to investigate the complaint. In October the College sent the plaintiff a letter charging him with unprofessional conduct. But in March of the following year, after he had informed the College that the defendant had been sued for malpractice 30 times, the College wrote the plaintiff that its disciplinary committee had "voted to take no further action with regard to this matter."

The plaintiff claims not to have known that the defendant was the source of complaints against him until June 13, 2007, when at a convention in California a bariatric surgeon told him about the Florida letter. After that he put two and two together and concluded that the defendant must have been the author of the complaint to the College. His previous ignorance of the putative source of the complaint is a little hard to credit, since the College had told him that the complaint concerned his conduct in the malpractice suit against the defendant. But we'll assume it's true—it has to be, or his goose is cooked, because he didn't file this suit until June 3, 2008. That was more than a year after the alleged defamation by the two letters but just under a year after the conversation in California; and the Illinois statute of limitations, which the plaintiff contends is applicable to his suit (the defendant disagrees, and their disagreement is the principal issue in the appeals), requires that a suit for defamation be brought within a year of the "publication" of the defamatory statement, 735 ILCS 5/13-201; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008)—unless the plaintiff could not have discovered the defamation within that period. *Tom*

*Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 164 (Ill. 1975); *Goodman v. Harbor Market, Ltd.*, 663 N.E.2d 13, 17-18 n. 3 (Ill. App. 1996); *Schweihs v. Burdick*, 96 F.3d 917, 920 (7th Cir. 1996) (Illinois law).

We begin our analysis with the issue of the missing letter to the American College of Surgeons. To proceed in a libel suit without the statement that is alleged to be defamatory is unconventional, though there are a few such cases. *Trail v. Boys & Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 137-38 (Ind. 2006), for example, was a libel suit by a disgruntled former employee against his supervisors complaining about a biased report that cast him in a negative light. He had not seen the report, and the court ordered the suit dismissed, explaining that "without the statement . . . the court cannot actually determine if the statement is legally defamatory." We haven't found a case in which such a suit was successful, but we don't think there is or should be an absolute rule that without the corpus delicti, as it were, a libel suit must fail. The allegedly libelous document might have disappeared through no fault of the plaintiff and there might be evidence of its existence and contents, such as testimony by persons who had read it—just as key evidence in a slander case, because slander is oral, is the testimony of persons who heard it. *Robinson v. Lescrenier*, 721 F.2d 1101, 1104 (7th Cir. 1983); *Simon v. Shearson Lehman Brothers, Inc.*, 895 F.2d 1304, 1309 (11th Cir. 1990); *Gasbarra v. Park-Ohio, Inc.*, 382 F. Supp. 399, 403 (N.D. Ill. 1974); *Israel Travel Advisory Service Inc. v. Israel Identity Tours, Inc.*, No. 92-C-2379, 1994

WL 30984 (N.D. Ill. Jan. 28, 1994), affirmed, 61 F.3d 1250 (7th Cir. 1995).

The plaintiff argues that he asked the College for the letter and the College wouldn't give it to him—indeed, would neither admit nor deny the existence of such a letter. He had joined the College as a defendant; and in its motion to dismiss (which was granted), the College argued that if there was such a letter it was privileged by the Illinois Medical Studies Act, 735 ILCS 5/8-2101 ("all information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of . . . the Illinois State Medical Society, [or] allied medical societies . . . used in the course of internal quality control . . . for improving patient care . . . shall be privileged [and] strictly confidential"); *Jenkins v. Wu*, 468 N.E.2d 1162, 1168-69 (Ill. 1984); cf. *Austin v. American Association of Neurological Surgeons*, 253 F.3d 967, 974 (7th Cir. 2001) (Illinois law); by the status of the College as a quasi-judicial body, *Illinois College of Optometry v. Labombarda*, 910 F. Supp. 431, 432-34 (N.D. Ill. 1996); and by the common law privilege for a communication that the defendant had a duty to make and did not disseminate any further than necessary. *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 619 N.E.2d 129, 132–35 (Ill. 1993); *In re Himmel*, 533 N.E.2d 790 (Ill. 1988); *Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir. 2004) (Illinois law); *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1022 (7th Cir. 1999) (same); *Jones v. Western & Southern Life Ins. Co.*, 91 F.3d 1032, 1035 (7th Cir. 1996) (same). A professional, including a doctor (see American Medical

Association, *Code of Medical Ethics*, Opinion 9.031 ("Report-
ing Impaired, Incompetent, or Unethical Colleagues"),
June 2004, www.ama-assn.org/ama/pub/physician-
resources/medical-ethics/code-medical-eth-
ics/opinion9031.shtml (visited Oct. 4, 2009)), has a duty to
notify the proper public or private authorities of unprofes-
sional conduct, which he observes, by a fellow profes-
sional.

The plaintiff made no effort to obtain the supposed letter
to the American College of Surgeons by compulsory
process and seems to have had no plans to do so. As we'll
see, he apparently did not realize that he *could* obtain it,
however unwilling the College was to divulge it, by
subpoena under Rule 45 of the civil rules unless the
College prevailed on one of its claims of privilege.

In light of the plaintiff's failure to obtain the letter, the
claim based on it is probably going nowhere even if
the letter exists and is not privileged. Indeed the claim may
have been dismissed already—and on the merits, rather
than for improper venue. The district judge termed the
plaintiff's assertion that he could not identify the alleged
defamatory statement made by the defendant because
"this information is solely in [the College's possession]
meritless, given his discovery rights." Later the judge
described the plaintiff's complaint as "insufficient to the
extent Kamelgard claims Macura made unidentified
defamatory statements to . . . American College of Sur-
geons" and therefore "there presently appears to be no
venue in this court for Kamelgard's claims against Macura.
Unless Kamelgard remedies this situation within 10 days,
his entire complaint shall be dismissed without prejudice

for lack of venue." Presumably the judge thought that if the plaintiff couldn't obtain the letter on which he based his claim against the College of Surgeons, the claim had no merit and therefore Illinois (where the College's head-quarters are located) had no connection to the suit: a New Jersey resident would be suing in Illinois a New York resident over a letter mailed to Florida from New York (presumably—but certainly not from Illinois).

When the judge turned down a request by the plaintiff to clarify what she meant by "discovery rights," the plaintiff's lawyer moved to take deposition testimony under Rule 27 of the civil rules. The judge referred the motion to a magistrate judge, who held a hearing at which he expressed bafflement at the plaintiff's invocation of that rule, which governs depositions taken before suit (to preserve evidence) or pending appeal, neither being a concern pertinent to this case. He asked why the plaintiff wasn't proceeding under Rule 45, which governs subpoenas. The plaintiff's lawyer was unacquainted with that rule and, it soon became clear, was in any event not seeking production of the letter, which he could have done (subject to a defense of privilege, Fed. R. Civ. P. 45(c)(3)(A)(iii)) by serving a subpoena duces tecum on the College. Fed. R. Civ. P. 26(b)(1), 45; *Gotham Holdings, LP v. Health Grades, Inc.*, No. 09-2377, 2009 WL 2809386 (7th Cir. Sept. 3, 2009); *Capital Co. v. Fox*, 85 F.2d 97, 100-01 (2d Cir. 1936) (L. Hand, J.). Instead he wanted to depose the bariatric surgeon who had told him in June 2007 in California about the investigation by the College and the defendant's letter to the American Society of Bariatric Surgeons.

The magistrate judge noted that the plaintiff's lawyer had withdrawn his motion to proceed under Rule 27, and suggested that he proceed under Rule 45 to obtain the letter, but he did not do so. It seems that he may not know how to use compulsory process to obtain a document from a third party for use in a proceeding in a federal court.

The district judge seems to have considered the failure to obtain the letter that the plaintiff thinks is in the College's possession fatal to his claim that the letter defamed him. For remember that she had said that if he didn't "identify" the defamatory statements that he claimed the defendant had made to the College, she would dismiss the case for improper venue, since, as we said, without defamatory statements to the College, Illinois has no connection to the suit. He never did "identify" the statements, and while the dismissal of the suit was without prejudice, probably that was only because the claim against the defendant for defamation by means of the mailing to Florida was still alive when the judge ruled, though that claim was abandoned, both in the defendant's reply brief in this court and by his lawyer at the oral argument, for reasons explained later in this opinion.

The most natural interpretation of the district judge's series of orders is thus that the plaintiff having failed even to attempt by use of process to obtain information that the judge thought vital to his claim of having been defamed in Illinois, that claim was dismissed under Rule 12(b)(6) (failure to state a claim), leaving just the claim based on the letter to Florida, which did not support venue in Illinois. A dismissal for failure to state a claim is

a dismissal on the merits, Fed. R. Civ. P. 41(b), unless the dismissal order states otherwise; and a dismissal on the merits is normally with prejudice and thus a bar to relitigation. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981); *Waypoint Aviation Services Inc. v. Sandel Avionics, Inc.*, 469 F.3d 1071, 1073 (7th Cir. 2006); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2373, pp. 739-42 (3d ed. 2008). The usual exception is where the court gives the plaintiff an opportunity to cure the defect in his complaint by filing an amended complaint. *Kaplan v. Shure Brothers, Inc.*, 266 F.3d 598, 601 (7th Cir. 2001); *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682 (7th Cir. 1990); *McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009). The judge had already given the plaintiff an opportunity to cure the defect (the absence of the letter or its contents), and the plaintiff's lawyer had flubbed it.

We are supported in our interpretation of the district judge's actions by the fact that unless she intended to dismiss the claim arising from the supposed letter on the merits, her ruling on venue would not make sense. For if that claim were viable, Illinois would be as good a venue for litigating it as anywhere, since the parties are residents of two different states and one of the alleged defamatory statements on which the suit is based was made in Illinois and the other in a fourth state, Florida. See 28 U.S.C. § 1391(a)(2); *Askew v. Sheriff of Cook County*, 568 F.3d 632, 636 (7th Cir. 2009); *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59 (2d Cir. 2007); *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001); 14D Charles A. Wright,

Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3806.1, pp. 199-216 (3d ed. 2007).

At the oral argument, the plaintiff's lawyer told us that the Florida letter had been mentioned in the complaint only to "bolster" the claim arising from the conjectured letter to the American College of Surgeons; the Florida letter was merely circumstantial evidence that the defendant had written a similar letter to the American College of Surgeons.

If the claim based on the Illinois letter was properly dismissed on the merits, then since the claim based on the Florida letter has been abandoned, the defendant is entitled to dismissal of the entire suit with prejudice, as he seeks. But there is uncertainty about what the district judge did or meant to do; the defendant has pitched his defense (and cross-appeal) on a separate ground—choice of law; and the plaintiff has some evidence that there was a defamatory letter to the American College of Surgeons. Given the simultaneous mailing to Florida and the fact that the defendant was the likeliest person to complain to the American College of Surgeons about the plaintiff's testimony in a malpractice suit against him, he probably did mail an identical or nearly identical letter to the College. Against this it could be argued that the plaintiff's failure to use compulsory process suggests doubt on his part about what that endeavor would have produced—perhaps no letter, perhaps no defamatory statements in the letter. But that would be an inference for the jury to draw or not as it wished.

So on to choice of law. The defendant argues that the applicable law in this case is not Illinois law, as he

had thought initially, until the district judge had questioned it (and as the plaintiff continues to argue), but New Jersey law. If he is right, the suit is time-barred because New Jersey, though like Illinois it has a one-year statute of limitations for defamation suits, 2A NJSA § 14-3; *In re Breen*, 552 A.2d 105, 111 (N.J. 1989); *Doug Grant, Inc. v. Greater Bay Casino Corp.*, 3 F. Supp. 2d 518, 538 (D.N.J. 1998), has no discovery rule for such suits. *Palestri v. Monogram Models, Inc.*, 875 F.2d 66, 70 (3d Cir. 1989) (New Jersey law); *Lawrence v. Bauer Publishing & Printing Ltd.*, 396 A.2d 569, 570–71 (N.J. 1979) (concurring opinion). In *Williams v. Bell Telephone Laboratories Inc.*, 623 A.2d 234, 239 (N.J. 1993) (per curiam), the New Jersey supreme court suggested a willingness to reconsider the issue in a future case, but it has yet to do so.

It used to be a flat rule (called *lex loci delicti*—the law of the place of the wrong) that the law applicable in a tort case is the law of the place where the tort occurred. *Slater v. Mexican National R.R.*, 194 U.S. 120, 126 (1904) (Holmes, J.); *Loucks v. Standard Oil Co.*, 120 N.E. 198, 201-02 (N.Y. 1918) (Cardozo, J.); *Restatement of Conflict of Laws* §§ 377-378 (1934); 2 Joseph H. Beale, *A Treatise on the Conflict of Laws* § 377.2, pp. 1287-88 (1935). And that means the place where the injury caused by the tort occurred. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 899-900 (Ill. 2007); *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 190 (2d Cir. 2009); *Abad v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009); *Kuehn v. Childrens Hospital*, 119 F.3d 1296, 1301 (7th Cir. 1997); *Rozenfeld v. Medical Protective Co.*, 73 F.3d 154, 155-56 (7th Cir. 1996). Injury is necessary to make an act a tort because there is no tort without an injury. *Id.* at 156; *Janmark, Inc. v.*

*Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Kanar v. United States*, 118 F.3d 527, 531 (7th Cir. 1997); W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 1, p. 4 (5th ed. 1984).

The theory of the old rule (if it can be dignified with the word "theory"), as explained in the Holmes and Cardozo opinions that we cited, is that the right to a tort remedy vests upon injury; the existence and scope of the right therefore depend on the law of the place of injury; and the vested right, viewed as a piece of property acquired in the place of injury, is carried by the plaintiff, like the turtle's shell, to wherever he decides to sue.

The old rule came to seem too rigid, mainly because of such anomalies as suits between citizens of the same state when it was not the state where the accident had occurred. The rule has been reduced, in effect, to a presumption, in Illinois as in other states. See *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970); *Ferguson v. Kasbohm*, 475 N.E.2d 984, 986-87 (Ill. App. 1985); *Carris v. Marriot Int'l, Inc.*, 466 F.3d 558, 560-61 (7th Cir. 2006) (Illinois law); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844-45 (7th Cir. 1999) (same); *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991); *Pevoski v. Pevoski*, 358 N.E.2d 416, 417 (Mass. 1976); *Restatement (Second) of Conflict of Laws* § 145 comment e, § 146 (1971). We say "in effect" because most states, including Illinois, nowadays apply the law of the state that has the "most significant relationship" to the claim, e.g., *Ingersoll v. Klein*, *supra*; *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996); *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 461 (N.J. 2008); *Restatement*, *supra* § 145(1),

rather than the *lex loci delicti*. But as we explained in the *Spinozzi* case, the state with the most significant relation to a claim is usually the state in which the tort (and therefore the injury) occurred. That state "has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. Most people affected whether as victims or as injurers by accidents and other injury-causing events are residents of the jurisdiction in which the event takes place. So if law can be assumed to be generally responsive to the values and preferences of the people who live in the community that formulated the law, the law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents—can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it." 174 F.3d at 845.

Defamation, however, is a tort that the old rule, now a presumption, very often doesn't fit, because often the defamatory statement is communicated in more than one state. There is also ambiguity concerning the injury caused by defamation—does it occur just where the plaintiff incurs some tangible harm such as a loss of income, or where his reputation is impaired, and if the latter does he *have* a reputation in a state in which the statement is communicated even if no one there has ever heard of him?

When the defamatory statement is communicated in many different states, it makes sense to apply the law of the plaintiff's domicile, and that is the usual result in

Illinois. See *Velle Transcendental Research Ass'n, Inc. v. Esquire, Inc.*, 354 N.E.2d 622, 625 (Ill. App. 1976); *Snead v. Forbes, Inc.*, 275 N.E.2d 746, 748-49 (Ill. App. 1971); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915-16 (7th Cir. 1994) (Illinois law), as elsewhere. *Selle v. Pierce*, 494 N.W.2d 634, 636-37 (S.D. 1993); *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995) (Texas law); *Reeves v. American Broadcasting Cos.*, 719 F.2d 602, 605 (2d Cir. 1983) (New York law); *Hanley v. Tribune Publishing Co.*, 527 F.2d 68, 70 (9th Cir. 1975) (Nevada law); *Restatement, supra*, § 150(2) and comment e (1971). But see *Wainwright's Vacations LLC v. Pan American Airways Corp.*, 130 F. Supp. 2d 712, 721-22 (D. Md. 2001) (Maryland law). That is where the principal injury from a defamation will occur because it is where the victim works and lives and where (in the usual case) most of the people—family, friends, business associates, etc.—are found with whom he has personal or commercial transactions, which might be impaired by defamation. *Snead v. Forbes, Inc., supra*, 275 N.E.2d at 748-49; *Crane v. New York Zoological Society*, 894 F.2d 454, 457 (D.C. Cir. 1990); *Hanley v. Tribune Publishing Co., supra*, 527 F.2d at 70; *Fitzpatrick v. Milky Way Productions, Inc.*, 537 F. Supp. 165, 171 (E.D. Pa. 1982). And it is where, according to Learned Hand, he feels the sting of defamation. Hand said that "the gravamen of the wrong in defamation is not so much the injury to reputation, measured by the opinions of others, as the feelings, that is, the repulsion or the light esteem, which those opinions engender." *Burton v. Crowell Publishing Co.*, 82 F.2d 154, 156 (2d Cir. 1936) (L. Hand, J.).

The *Restatement*, while stating that in a defamation case "the state of most significant relationship will usually be the state where the person was domiciled at the time," adds—"if the matter complained of was published in that state." *Restatement*, *supra*, § 150(2). In the law of defamation, the word "published" just means that the defamatory statement was made to someone other than the plaintiff. *Frank v. Kaminsky*, 109 Ill. 26 (1884); *Emery v. Northeast Illinois Regional Commuter R.R.*, 880 N.E.2d 1002, 1009 (Ill. App. 2007); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1104 (9th Cir. 2009). There is no actionable defamation if the recipient of a letter that libels him, no copy of which has been sent to anyone else, tears it up without communicating its contents to anyone (that is, without "self-publication," as in *Rice v. Nova Biomedical Corp.*, *supra*). For then he cannot suffer an injury to his reputation, or the repulsion that he feels because of the bad opinion of him that readers of the libel form.

No defamatory letter, so far as appears, was mailed to New Jersey; there was no "publication" there. But absence of publication in the plaintiff's domicile should not be an absolute bar to the application of the law of that domicile. What is true, rather, is that the presumption of the applicability of that law may be rebutted by showing that the plaintiff incurred no harm at all in his domicile state (an approach intimated in *Ramsey v. Fox News Network, LLC*, 351 F. Supp. 2d 1145, 1149 (D. Colo. 2005), and *Arochem Int'l, Inc. v. Buirkle*, 767 F. Supp. 1243, 1246-47 (S.D.N.Y. 1991)), and if no one in that state had seen or learned of the defamatory statement, even second hand, this would be a powerful rebuttal to the presumption that

there was harm there. But notice that Hand's analysis would suggest that the state of the plaintiff's domicile would *still* be the primary site of the plaintiff's injury, implying that its law would govern, even if the defamation had been communicated entirely to people in other states and no one in the plaintiff's state—besides the plaintiff— was even aware of it.

The plaintiff is eager to abandon his Florida claim because it would make his suit one charging multistate defamation, and would thus point—although, as we have just seen, not unwaveringly—to the application of New Jersey law. He prefers a claim limited to Illinois and governed by Illinois law (assuming his Illinois claim survived his inability or unwillingness to make a serious effort to obtain the letter to the College of Surgeons), with its discovery rule. But abandoning the Florida claim does not establish that Illinois law should trump New Jersey law. The American College of Surgeons is located in Illinois but is no longer accused of anything, and so Illinois has no interest in the case. Injury to the plaintiff's reputation, if that should be presumed to occur every time a bariatric surgeon (or perhaps anyone) learns about the complaint to the College, would occur wherever members who heard about the complaint live and work, and that could be anywhere in the United States. There is nothing to suggest that more bariatric surgeons heard about it in Illinois than in New York or New Jersey or California or any other major state. It's not as if bariatric surgeons are concentrated in Illinois. Of the 1,712 members of the American Society for Metabolic and Bariatric Surgery who are actually practicing surgery, only 54 are in Illinois. (The

top states are California, Texas, New York, and Florida, with 193, 180, 117, and 103 such members.) The five members of the College of Surgeons' disciplinary committee, which received the complaint about the plaintiff and referred it to the three bariatric surgeons, would be among the surgeons most likely to have lost esteem for the plaintiff on the basis of the defendant's letter (always assuming that there was such a letter and that it was defamatory). But none of the five lives or practices in Illinois, and none of them is a bariatric surgeon; there is no indication of where the three bariatric surgeons who evaluated the complaint practice.

The plaintiff's argument that he is injured whenever someone reads or hears about the complaint to the American College of Surgeons could, if thought a basis for resolving choice of law issues, lead to ridiculous forum-shopping. If a bariatric surgeon in Iceland read a newspaper article about the complaint against the plaintiff, could the plaintiff ask the Illinois court to apply Icelandic law? The plaintiff has no reputation in Iceland to be damaged by an Icelander who reads about him in an Icelandic newspaper, so unless he were planning to move to that country he wouldn't suffer any injury for which defamation law would provide a remedy. *Mattox v. News Syndicate Co.*, 176 F.2d 897, 900 (2d Cir. 1949) (L. Hand, J.); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 234 (2d Cir. 1963) (Friendly, J.); cf. *Restatement*, *supra*, § 145, comment e.

It is true that general damages can be awarded in defamation cases against private persons, which is to say damages not based on proof of tangible injury. *Cook v. East*

*Shore Newspapers, Inc.*, 64 N.E.2d 751, 767 (Ill. App. 1945); *Dishnow v. School District of Rib Lake*, 77 F.3d 194, 199 (7th Cir. 1996) (Wisconsin law); *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1255 (7th Cir. 1995) (Illinois law); *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1080 (3d Cir. 1985) (Pennsylvania law). That is related to Hand's point in the *Burton* case; in *Marcone* the court remarked that the plaintiff "was entitled to recover [general damages] for injury to his reputation *as well as for personal humiliation and mental anguish*." 754 F.2d at 1080 (emphasis added). The same point is made in the *Cook* case, 64 N.E.2d at 767, an Illinois case. But only New Jersey, where the plaintiff has his practice and is therefore likely to suffer tangible harm from defamation that impugns his professional integrity and competence, even if the defamation is not published there, has a *substantial* interest in protecting him from defamation; and it is therefore New Jersey law that should apply. So the suit is indeed time-barred, and should, as the defendant urges in his cross-appeal, have been dismissed with prejudice. The judgment of the district court dismissing the suit is therefore modified to make the dismissal with prejudice.